[Crim. No. 1453.   Fourth Dist.   Oct. 28, 1960.]

THE PEOPLE, Respondent, v. WALTER ELMER LINDEN, Appellant.

George Ritner, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, S. Clark Moore, Deputy Attorney General, James Don Keller, District Attorney, and Donald L. Meloche, Deputy District Attorney, for Respondent.

SHEPARD, J.—Defendant was convicted of possession of a firearm capable of being concealed upon the person by one previously convicted of a felony. (Pen. Code, § 12021.) He appeals in propria persona from the judgment of conviction. Defendant's trial counsel was appointed to represent defendant on this appeal and he has filed a written certificate with

this court that he has reviewed the record and finds no meritorious grounds for an appeal. The attorney general has filed a memorandum brief setting forth his review of the record and he likewise finds that there are no meritorious grounds on appeal. However, defendant has himself filed with this court a document entitled "Petition for a Writ of Habeas Corpus." He therein advances only one contention, which is, in effect, that the evidence of possession by him of the firearms capable of being concealed upon the person was obtained by illegal search and seizure, and that the receipt by the court during trial of such evidence was therefore prejudicially erroneous.

The facts as shown by the record before us are as follows: On October 14, 1959, about 10 o'clock p.m., Officers Deaver and Odam of the Escondido Police Department were informed by radio of a suspected drunk driver on Highway 395 near Escondido in a vehicle described as a four-door black Buick sedan with two male occupants. Proceeding south on Highway 395, the officers noticed a black Buick sedan similar in appearance to that described on the radio, parked on the shoulder of the highway also headed south near 8th Street. Defendant was out of the car standing near the fence opposite the car. The officers were forced by traffic to proceed to 9th Street, where they turned around, proceeded back north to the next crossing above the Buick, again turned around and proceeded south, and stopped on the shoulder of the highway behind the Buick. A service station at 9th Street was in the process of closing. As the officers stopped a few feet behind the Buick, defendant appeared to be facing south toward the service station. He immediately rushed back to the Buick, where his companion, French, was seated in the front passenger seat with the door open and his feet on the ground. Defendant appeared to reach across French toward the driver's side of the car. While this was happening, the officers were alighting from their own car. They approached defendant's Buick and saw there was no license plate attached to the rear of the car. Questioned by the officers, defendant stated he was the driver and owner of the car. No registration certificate was found in the car. Questioned about this, defendant produced a purported bill of sale, handwritten on a piece of paper resembling scratch pad paper, from some used car automobile agency in Texas. Defendant later testified he had just returned from the State of Texas the night before.

About this time, California Highway Patrolman Moyse

stopped his car behind the police car, got out, approached and overheard the conversation between defendant and the police officers concerning the ownership of the car and the handwritten bill of sale. At this point French got out of the car, and Moyse directed his flashlight through the open door into the front compartment. He observed two pillows on the seat directly behind the drive wheel, from beneath which he saw and recognized the butt of a revolver. He reached in, raised the cushions to confirm his recognition of what he had seen, stepped back, called Officer Deaver to bring Linden, and while Linden and Deaver were looking, reached into the car and picked up two revolvers which had been partially concealed under the pillows. Both revolvers were fully loaded. Questioned then, defendant stated the revolvers belonged to his wife for her protection, and that he had never been arrested before. Defendant and French were then arrested.

Next day, October 15, defendant again stated that the revolvers belonged to his wife, and that he had never been convicted of a felony. The officers then interviewed Linden's wife. On October 16, the officers again interviewed defendant and told defendant that his wife had denied ownership of the revolvers and had said that defendant had been convicted of armed robbery in Missouri. Defendant then stated that he had purchased the weapons in a union hall in St. Louis, Missouri, that he had placed the revolvers in the front seat, and admitted the previous conviction of armed robbery.

In his trial testimony, defendant admitted conviction in 1955 in St. Louis, Missouri, of first degree robbery by means of a dangerous weapon, and also admitted conviction of attempted robbery, first degree, by means of a dangerous weapon. There was also introduced into evidence by the prosecution, a certified copy of the record of such convictions.

In his testimony, defendant denied standing near the fence, or rushing back to the car, or reaching into the car, contending he had been standing near the car urinating; denied knowledge of the service station nearby, denied any knowledge of the guns until he saw them in Officer Moyse's hands, denied stating they belonged to his wife, denied stating he obtained the guns in St. Louis, Missouri, and denied telling the police they were his guns. He testified that French came with him in the car from Missouri, and that the officers refused to permit defendant to consult an attorney until after defendant was taken to San Diego some two or three days later.

French testified that he obtained the guns at the union hall in San Diego by means of a loan of $12 to a man whose name he did not know. He denied having told prosecution witness Woods that the guns were purchased out of money obtained from the sale of defendant's wife's television set, denied having stated to said witness that defendant had possession of the pistols, and admitted ownership of them.

While it is difficult to ascertain with exactitude the points of complaint defendant seeks to make in this appeal, we will discuss those matters to which he has apparently given some attention in his document filed with this court and referred to above.

## HEARSAY RECITALS ADEQUATELY COVERED BY COURT'S INSTRUCTIONS

During the testimony of Officer Woline, the witness testified to a conversation with defendant, in which conversation the witness related to defendant the statement of defendant's wife that defendant had served a term for armed robbery in Missouri, and that she denied owning the guns. Whereupon in said conversation defendant admitted the prior conviction of armed robbery and having obtained the guns at the union hall in St. Louis, Missouri. The court then adequately and carefully explained to and instructed the jury that such recital of conversation thus containing statements of the wife, was not itself admissible as evidence against defendant, but was admitted only for the purpose of enabling the jury to interpret and understand what defendant himself said. The manner in which the evidence was received and restricted by the court's instructions clearly directed the jury to receive it solely on the question of whether or not defendant at that time did make an admission against interest. No other or additional instruction was requested on this subject by defendant, and the court's instruction which was given adequately and properly informed the jury how to evaluate this testimony.

Likewise, the testimony of witness Woods, in impeachment of defense witness French relative to purported statements by French to Woods, was adequately and properly restricted by the court's instruction to the jury that such testimony was to be received solely for the purpose of enabling them to better evaluate the testimony of witness French, and that they must consider it for no other purpose. No other instruction on the subject was requested by defendant. (*People* v. *Francis,* 156 Cal.App.2d 1, 7 [5] [319 P.2d 103] ; *Peo-*

*ple* v. *Simmons,* 28 Cal.2d 699, 712 [4, 5] [172 P.2d 18];
*People* v. *Davis,* 48 Cal.2d 241, 249 [4, 6, 7] [309 P.2d 1].)

### SEARCH AND SEIZURE WERE LAWFUL

■ In the case here at bar, the officers, in the nighttime, observed a car parked on the shoulder of the highway about a block north of a service station which they had observed to be in the process of closing. It resembled a car about which they had been warned respecting drunk driving. When they stopped behind it, defendant rushed from the fence to the car and reached inside the car. The car had no rear license plate, and no registration certificate could be found. They used a flashlight to view from the outside the contents of the car. The officer recognized the butt of a revolver protruding from beneath two pillows.

All of these matters, taken together, were more than adequate to reasonably arouse the suspicions of any alert officer and to give reasonable cause for search. (*People* v. *Robles,* 183 Cal.App.2d 212, 215 [6] [6 Cal.Rptr. 748]; *People* v. *Garcia,* 171 Cal.App.2d 757, 760 [2] [341 P.2d 351]; *People* v. *Brajevich,* 174 Cal.App.2d 438, 444 [344 P.2d 818]; *People* v. *Martin,* 46 Cal.2d 106, 108 [1, 2] [293 P.2d 52]; *People* v. *Blodgett,* 46 Cal.2d 114, 117 [2, 3] [293 P.2d 57].)

In the circumstances here present, there is no significance in whether the search preceded or followed the arrest. (*People* v. *Simon,* 45 Cal.2d 645, 648 [3] [290 P.2d 531].)

Under the circumstances here present, the use of a flashlight to view from the outside the contents of a car is not an unlawful entry or search. (*People* v. *Wright,* 153 Cal.App.2d 35, 38 [2] [313 P.2d 868]; *People* v. *Brooks,* 154 Cal.App.2d 631, 635 [5] [316 P.2d 435]; *People* v. *Carnes,* 173 Cal.App.2d 559, 566 [3] [343 P.2d 626].) The officers were not required to blind themselves to what was in plain sight (*People* v. *Williams,* 169 Cal.App.2d 400, 402 [1] [337 P.2d 134]), nor is such an observance a search. (*People* v. *Roberts,* 182 Cal. App.2d 431, 437-438 [6] [6 Cal.Rptr. 161].)

The weapons under the pillows were concealed so as to be within the proscription of Penal Code, section 12025 (carrying weapon concealed within vehicle), but the handle of one of them was, in fact, seen by the officer without a search. At that point the officers were justified in further search, not only for evidentiary matter, but out of ordinary common sense for their own protection. (*People* v. *McFarren,* 155 Cal.App.2d

383, 384 [2] [317 P.2d 998].) The court's ruling on the admission of this evidence was correct.

### No Showing of Prejudice From Lack of Attorney

Shortly after defendant reached San Diego, he was released on bail, and there is no contention that he did not have ample opportunity for consultation with counsel prior to trial, nor does defendant point out in any way how he was prejudiced by lack of an attorney prior to reaching San Diego, if he was, in fact, denied an attorney. He makes no contention, nor is there any evidence in the record to even suggest that his statements during that time were not voluntary. There was no prejudicial violation of due process, even though it were found to be true that he was not allowed to see an attorney at the time of his arrest and police interrogation. (*Crooker* v. *California,* 357 U.S. 433 [78 S.Ct. 1287, 2 L.Ed.2d 1448]; *Cicenia* v. *LaGay,* 357 U.S. 504 [78 S.Ct. 1297, 2 L.Ed.2d 1523]; *Spano* v. *New York,* 360 U.S. 315 [3 L.Ed.2d 1265, 79 S.Ct. 1202].)

Since the statements were made voluntarily, they were still admissible as evidence even if obtained during illegal detention. (*Rogers* v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929]; *People* v. *Bashor,* 48 Cal.2d 763, 765 [2] [312 P.2d 255].)

### Evidence Must Be Viewed in the Light Most Favorable to People

There is some conflict in the evidence, but it is the duty of this court, on appeal, to " '. . . assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.'
If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury." (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) See also *People* v. *Dail,* 22 Cal.2d 642, 650 [1] [140 P.2d 828]; *People* v. *Love,* 53 Cal.2d 843, 850 [2] [3 Cal.Rptr. 665].

The elements of this offense are prior conviction of a felony and ownership or possession of a firearm. (*People* v. *De Prima,* 172 Cal.App.2d 109, 114 [3] [341 P.2d 840].) Viewing the evidence in the light above noted, it is clear that there was ample evidence to sustain the verdict of the jury.

A review of the entire record convinces us that defendant had a fair trial.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.