[Civ. No. 7318. Fourth Dist. July 8, 1963.]

JAMES WILLIAM MARDIS, Petitioner, v. THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Charles E. Ward, Public Defender, and Grace M. Storey, Deputy Public Defender for Petitioner.

Lowell E. Lathrop, District Attorney, and Milton C. Dawson, Deputy District Attorney, for Respondent.

No appearance for Real Party in Interest.

CONLEY, J.*—The petitioner is the defendant in criminal action No. 16718, pending in the County of San Bernardino, entitled "The People of the State of California, Plaintiff v. James William Mardis, Defendant." On March 6, 1963, a preliminary hearing was held in the Justice Court of the Barstow Judicial District, and the defendant was held to answer to the superior court. The transcript of the testimony on the preliminary hearing is before this court.

On March 18, 1963, the district attorney filed an information charging the defendant with the crime of possession of a firearm by a felon, Penal Code section 12021. By a timely motion petitioner sought to set aside the information pursuant to the provisions of section 995 of the Penal Code; the trial court denied the motion on April 5, 1963. Upon arraignment, the defendant entered a plea of not guilty, and his trial was set for May 27, 1963. Prior thereto, the petitioner filed a petition for a writ of prohibition; the order to show cause was issued, and the proceedings in the trial court were stayed pending a decision.

Petitioner claims that he was committed without reasonable or probable cause. This contention is predicated on the opinion of the petitioner that the only evidence upon which he was

*Assigned by Chairman of Judicial Council.

held to answer was the result of an unlawful search and seizure.

 Prohibition is a proper means to test the right of the prosecution to proceed with the trial of a charge when the validity of an information is challenged on the ground that the defendant has been committed without reasonable or probable cause. (*Polos* v. *Superior Court*, 175 Cal.App.2d 210 [345 P.2d 981] ; *Hendricks* v. *Superior Court*, 197 Cal.App.2d 586 [17 Cal.Rptr. 364] ; *Rogers* v. *Superior Court*, 46 Cal.2d 3 [291 P.2d 929] ; *Murphy* v. *Superior Court*, 188 Cal.App.2d 185 [10 Cal.Rptr. 176] ; Code Civ. Proc., §§ 1102, 1103.)

 A defendant is held to answer without reasonable or probable cause if his commitment is based entirely on incompetent and improperly received evidence. In such circumstances a trial court should grant a motion to set aside the information, and if it does not do so, a peremptory writ of prohibition is a proper remedy to prevent further proceedings. (*Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23] ; *People* v. *Prewitt*, 52 Cal.2d 330 [341 P.2d 1] ; *Priestly* v. *Superior Court*, 50 Cal.2d 812 [330 P.2d 39].)

It is obvious that the only proof which will authorize a magistrate to hold an accused person for trial, thus authorizing the filing of an information, must consist of legally competent evidence. If an essential element of the proof below was improperly admitted and was inadmissible by its nature under the laws of the state, the writ of prohibition would necessarily issue. (*Priestly* v. *Superior Court, supra*, 50 Cal. 2d 812.)

Turning to the record of the preliminary examination, there can be no question that Mardis was previously convicted of a felony and served time therefor in the California State Prison. A certified copy of the record of the Department of Corrections was received in evidence without objection, and the first element of the offense was thus clearly proven.

 L. A. Banks, a witness for the People, testified that he was a member of the California Highway Patrol and that on February 7, 1963, he was on duty in San Bernardino County. He recalled seeing the defendant at that time, apparently asleep under a cotton blanket in the back seat of a Cadillac automobile parked at the side of the highway, about 3 miles from Wildwash, "just off of the paved portion of Highway 66-91"; the car was about 30 feet from the edge of the paved portion of the northwest side of the road. The officer was performing routine patrol work, and was particu-

larly looking for the same, or a similar vehicle, described as a green sedan, possibly a Buick, as to which he had received an official report over his radio to the effect that shortly before an automobile of this type had been observed on the highway being operated in a fashion that led to the belief that it was being driven by a person under the influence of alcoholic liquor.

A Highway Patrol officer may properly act on the basis of information received through an official radio broadcast. (*People* v. *Hupp,* 61 Cal.App.2d 447, 450 [143 P.2d 84].) Motor vehicle patrol officers have important and specialized duties to perform for the preservation of the peace and quiet of the state and the well-being of thousands of travelers. They must act legally but also rapidly in order to carry out their assigned tasks. The people with whom they deal usually move very quickly over many miles of highway. Occasions arise for the rendering of aid of various kinds to motorists. In order to promote maximum safety for all users of the highways, the laws must be enforced, sometimes in unusual situations and under grave difficulties. There are many offenses and crimes which make themselves evident in addition to the offenses particularly relating to the operation of vehicles, and the general situation that presents itself by virtue of the mass movement of humanity on the roadways must be properly considered in applying basic criteria to the multiform situations which arise by virtue of the grafting of the automobile complex to our previously relatively quiet life.

The thought that necessarily must have activated Officer Banks in the performance of his duties in this case was the protection of the traveling public from the possibility of a drunken driver resuming his use of the highways.

When he arrived at the scene of the parked car he stopped his own vehicle and played his flashlight into the interior of the Cadillac, where he observed the defendant apparently asleep. He looked through the automobile from where he was standing, then moved over to the left front door, then walked around to the rear, examining the car, and on around to the righthand side, shining his light into the interior and observing the defendant and what was in the car itself. He then did the same at the right front window and walked on, repeating the operation twice by going around the car. He then opened the right front door and put his head in to look at the glove compartment, the door of which was at all times open.

At the instant of opening the automobile door he was assailed by a heavy odor of intoxicants in the car, apparently emanating from the breath of the defendant. The officer noted that there was a holster in the compartment, clearly visible; the compartment also contained some maps and papers. He drew the leather holster from the compartment. It contained a black revolver, which was of a size that could be concealed upon the person. He found that the pistol had six rounds of ammunition in it, and he removed the bullets and placed them and the gun in his pocket. He then awakened the defendant and had a conversation with him. The defendant appeared to be partly dazed when he woke up, inferentially due to the influence of alcohol, and he did not at first seem to realize that he was in an automobile, but thought that he was at home. The defendant frankly admitted the fact that the gun belonged to him, and it was later clearly established that he had been convicted of a felony.

As a result of the information received from the official broadcast, the officer had not only the right but the duty to determine the condition of the driver and the right of the occupant to be in the vehicle. Section 2805 of the California Vehicle Code gives permission to the Highway Patrol to inspect any vehicle of a type to be registered under the code for the purpose of investigating the title and registration thereto. A drunken driver is a serious menace to the safety of others using the highway, and a highway patrolman who would omit to make a proper investigation of the circumstances which were evident here would be remiss in his duty. In order to determine the condition of the occupant, as well as his right to the vehicle, the officer had the authority to open the car door, and when he did so, the strong odor of intoxicants which met his nostrils gave him the additional right and duty to complete his investigation.

It would appear that the officer did not actually carry on a search to discover the forbidden weapon, because the holster carrying the gun was in plain view when the officer looked into the open glove compartment of the car. ■ As was observed in *People* v. *Spicer,* 163 Cal.App.2d 678, 683 [329 P.2d 917], quoting from *People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729]:

" 'A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is

generally held that the mere looking at that which is open to view is not a "search." ' ' "

(See also *People* v. *Linden,* 185 Cal.App.2d 752, 757 [8 Cal.Rptr. 640]; *People* v. *Nebbitt,* 183 Cal.App.2d 452, 460 [7 Cal.Rptr. 8]; *People* v. *Murphy,* 173 Cal.App.2d 367, 377 [343 P.2d 273]; *People* v. *Barnett,* 159 Cal.App.2d 22, 30 [323 P.2d 96]; *People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]; *People* v. *Jaurequi,* 142 Cal.App.2d 555, 561-562 [298 P.2d 896]; *People* v. *McFarren,* 155 Cal.App.2d 383, 384 [317 P.2d 998].)

The testimony shows no prying into a locked or closed glove compartment for that which might have been concealed, but a mere observation of that which was open to view, followed by a taking of the gun into possession. Among the incidents of a highway patrolman's services to the public is the danger of his being shot by persons drunk or sober whom he may interview on the highway in the course of duty (see *People* v. *Kendrick,* 56 Cal.2d 71, 78 [14 Cal.Rptr. 13, 363 P.2d 13]), and it is a right of a highway patrolman who does investigate in line of duty to see to it that the person questioned under suspicious circumstances is not in a position to use a gun against him. (*People* v. *Linden, supra,* 185 Cal.App.2d 752, 757; *People* v. *McFarren, supra,* 155 Cal.App.2d 383, 384.)

But even if we consider the actions leading to the taking of the gun by motor vehicle patrolman as a "search," he had reasonable and probable cause to arrest the defendant for an offense being committed in his presence, namely, "disorderly conduct," by being found in a public place under the influence of intoxicating liquor ". . . in such a condition that he is unable to exercise care for his own safety or the safety of others, . . ." (Pen. Code, § 837, subd. 1; Pen. Code, § 647, subd. (f).)

When an arrest is lawful because there is reasonable and probable cause, reasonable search and seizure made in good faith in connection with it is legal. (*People* v. *Allen,* 142 Cal.App.2d 267, 280 [298 P.2d 714]; *People* v. *Smith,* 153 Cal.App.2d 190, 192 [314 P.2d 31]; *People* v. *Winston,* 46 Cal.2d 151, 162 [293 P.2d 40].) Of course the search must be incidental to the arrest and contemporaneous therewith as to time and integrated as to place. (*People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469].) In the circumstances of this case, it was not significant that the "search"

preceded the arrest. (*People* v. *Simon,* 45 Cal.2d 645, 648 [290 P.2d 531]; *People* v. *Poole,* 174 Cal.App.2d 57, 62-63 [344 P.2d 30].) ▆ If it be observed that the actual prosecution is for a felony, possession of a weapon capable of being concealed on the person by a previously convicted felon, rather than the misdemeanor of being drunk in a public place, it is in accordance with common sense and normal practice that if in the course of an investigation of a misdemeanor it develops that a felony has been committed, the actual prosecution would properly be for the more serious crime. Once evidence is lawfully obtained, the state may use it in the enforcement of any law which may have been violated.

The order to show cause is discharged, the stay of proceedings vacated, and the writ of prohibition denied.

Griffin, P. J., and Brown (Gerald), J., concurred.