[Crim. No. 11390.   Second Dist., Div. Two.   Dec. 20, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES ROY NIETO, Defendant and Appellant.

Caryl Warner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Raymond M. Momboisse and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was charged by information with violation of the Dangerous Weapons' Controls Law, section 12021 of the Penal Code, in that he had ". . . in his possession . . . a .38 Cal. Revolver and a .22 Cal. Revolver, capable of being concealed . . . and having a barrel less than twelve inches in length," appellant having previously been convicted of robbery, a felony.

On May 26, 1965, a jury being duly waived, appellant was tried by the court. Appellant's prior conviction of a felony was stipulated. He was found guilty and sentenced to state prison.

Appellant contends that the evidence is insufficient to support the conviction; that he was deprived of his right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution; and that the guns introduced in evidence were the subject of a wrongful search and seizure in violation of the Fourth Amendment to the Constitution. Appropriate motions to exclude the guns and the two statements of appellant allegedly elicited in violation of his rights to counsel were made at the proper times at trial, and were considered and denied by the court.

On the evening of February 10, 1965, appellant and his passenger, Jesse Lomeli, were driving on Wilmington and San Pedro Road at approximately 50-55 miles-per-hour in a 40-mile zone. The car had no taillights or license plate illumination and was spotted by Officers Pitman and Wilkinson. The car continued at the 50-55 mile speed for a brief distance before it was stopped by the officers.

Appellant pulled to the curb, got out, and walked toward the police car with his hands raised. He was recognized by Officer Pitman as a parolee. Pitman testified he asked for appellant's driver's license, looked into the car, and asked appellant for the name of his passenger. Appellant said it was Johnny Martinez. Pitman recognized the passenger as Jesse Lomeli, and advised his partner Wilkinson that the identification given by appellant was incorrect. Pitman testified: "My partner then asked Mr. Lomeli to step from the car, which he

did. At that point my partner reached down and extracted something from the car and walked back to where I was standing and showed me a gun.

"Shortly after my partner showed me the other gun, the .22, I walked up to Mr. Nieto's car and saw this gun laying partially protruding from the center portion. It was on the floor board, partially protruding from under the seat in the center part of the car."

Both men were handcuffed and arrested. They were advised of their constitutional rights.

Pitman testified that later at the police station: "I asked him [referring to Nieto] where the guns came from and he said he did not know, that he had never saw [*sic*] them before. I also asked him if he knew anything about any of the robberies that had been occurring in the Wilmington area and he stated, 'In my position I can't tell you anything about any guns or any robberies. I'm going, anyway, but I'm not going to help you.' "

Lomeli testified that the guns found by the officers were his, and that he had found them earlier in the evening in a lot behind the Golden Garter. The guns were in his waist-band and were hidden by a zippered jacket he was wearing. When the car was stopped, Lomeli attempted to hide the guns under the front seat. As he got out of the car, he said he attempted to close the door, but the officer held it open, shone a flashlight inside, and found the guns. Lomeli said further he denied ownership of the guns at the scene of the arrest because he had previously been convicted of a felony and ". . . felt that if I admitted the guns were mine, I was admitting my crime."

Appellant denied the guns were his, that he knew Lomeli had guns on his person, or that he had ever seen the guns before. He stated that he had lied to the officers at the scene of the arrest about Lomeli's identity because he had observed Lomeli to be under the influence of narcotics and knew it was a violation of his parole to be associated with people who use narcotics. He also stated that he raised his hands in the air when the car was stopped as a joke.

In challenging the sufficiency of the evidence to support his conviction, appellant must clearly show that the evidence is insufficient to support the verdict. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42] ; *People* v. *Gonzalves,* 158 Cal.App.2d 98, 101 [322 P.2d 255].) This is particularly true

where trial is to the court and not a jury. *People* v. *Kittrelle,* 102 Cal.App.2d 149 [227 P.2d 38], one of the numerous cases on the point, says at page 153: "The function of this court is to correct errors of law and, where a jury has been waived, before the judgment may be set aside on appeal it must clearly appear that upon no hypothesis is there sufficient evidence, circumstantial or otherwise, to support the conclusion reached by the trial court. (*People* v. *Hills,* 30 Cal.2d 694, 701 [185 P.2d 11] . . .)"

Appellant argues that the evidence is insufficient to support a finding that he had "ownership, possession, custody or control" of the weapons found in his car.

■ The evidence clearly shows that the guns were found under the front seat of appellant's car at a time when he was driving the vehicle. At the very least, this is circumstantial evidence supportive of a finding of joint or constructive possession, custody or control of the guns by appellant, and sufficient to sustain his conviction. (See *People* v. *Hunt,* 221 Cal.App.2d 224, 227 [34 Cal.Rptr. 421]; *People* v. *Garcia,* 187 Cal.App.2d 93, 101-102 [9 Cal.Rptr. 493]; *People* v. *Pearson,* 150 Cal.App.2d 811, 818 [311 P.2d 142].) In *People* v. *Young,* 197 Cal.App.2d 129 at page 132 [17 Cal.Rptr. 283], the court, quoting from *People* v. *Torres,* 98 Cal.App.2d 189, 193 [219 P.2d 480], pointed out:

" 'Where the circumstances in evidence are such as would reasonably justify an inference of guilt, and the court so found, the fact that an inference of innocence might also just as reasonably have been predicated on such circumstances does not present a question of law reviewable by an appellate court.' "

■ Penal Code, section 12021 requires no specific criminal intent (*People* v. *Vanderburg,* 214 Cal.App.2d 455, 462 [29 Cal.Rptr. 553]), but is violated when ownership, possession, custody or control of a firearm capable of being concealed upon the person is proven against one who has previously been convicted of a felony. (*People* v. *Hunt, supra,* at page 225; *People* v. *Hilliard,* 221 Cal.App.2d 719, 724 [34 Cal.Rptr. 809]; *People* v. *DePrima,* 172 Cal.App.2d 109, 114 [341 P.2d 840].)

Appellant contends that his Sixth Amendment rights were violated in two instances: by the admission of testimony of his false identification of Lomeli, and his statement to Pitman in the police station without a foundation that it was free and voluntary. Appellant cites *People* v. *Anderson,* 63 Cal.2d 351

[46 Cal.Rptr. 763, 406 P.2d 43], *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], in support of his position.

Reliance on these cases is misplaced. ▮ The routine stopping of a motorist for a traffic violation is not an arrest, but merely a detention (*People* v. *Jackson,* 241 Cal.App.2d 189, 191 [50 Cal.Rptr. 437]; *People* v. *Glaceran, supra,* 178 Cal.App.2d 312 [2 Cal.Rptr. 901] at page 315.) The facts at bench show that appellant was speeding and driving without rear lights. There was ample justification to stop the vehicle. When appellant stepped out of his car, he approached the officers with raised hands and was recognized by Pitman as a prior felon. Appellant's peculiar behavior, the violations for which the car was stopped and the fact that the Wilmington area had suffered a recent rash of burglaries, justified Pitman asking appellant to identify his passenger.

▮ The officer's questioning at the scene of the arrest was investigatory. It was not until after the officer recognized appellant and after appellant had obviously lied, about the identity of his passenger, could it reasonably be even suggested that the accusatory stage was reached. After the car had been stopped, appellant's behavior and his statement, together with what the officers saw in plain view, was ample probable cause to suspect that more than a traffic violation might be involved. In any case, questions asked during the investigatory stage, even though prior to any advice in respect of contraband, are admissible into evidence. (See *People* v. *Lewis,* 240 Cal.App.2d 546, 551-552 [49 Cal.Rptr. 579]; *People* v. *Woods,* 239 Cal.App.2d 697, 704 [49 Cal.Rptr. 266].) The recent case of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], does not change the admissibility of this evidence. In any event, *Miranda* is inapplicable here, since the trial occurred more than a year before the date of *Miranda.*

▮ Appellant's contentions with respect to the statement made after his arrest are equally without merit. The record shows that appellant was properly instructed on his constitutional rights and then taken to the police station. The challenged statement, ending "I'm going, anyway, but I'm not going to help you" was made shortly thereafter. The close time sequence between the warning and the statement, and appellant's alert condition and previous experience with law enforcement, support a finding that appellant intelligently

waived his constitutional rights. (See *People* v. *Bauer*, 241 Cal.App.2d 632, 636-640 [50 Cal.Rptr. 687]; citing *People* v. *Schader*, 62 Cal.2d 716, 727-728 [44 Cal.Rptr. 193, 401 P.2d 665]; see also *People* v. *Martin*, 240 Cal.App.2d 653, 657-658 [49 Cal.Rptr. 888].)

■ Appellant urges that his statements to the police were not voluntary. The trial court's conclusion is buttressed by the entire record which indicates that all statements were completely voluntary, and the sophisticated but self-incriminatory refusal by appellant to give the officers any information which might be harmful to his cause, further supports the conclusion of voluntariness. The words themselves demonstrate appellant's awareness of his rights.

■ Appellant, relying on *People* v. *Burke*, 61 Cal.2d 575, 578-580 [39 Cal.Rptr. 531, 394 P.2d 67], urges that the guns were the product of an unlawful search and seizure. He suggests that the automobile should have been impounded and searched after a search warrant had been obtained. In the instant case, however, the officers did not "search" to find the guns, but observed them in plain sight. The distinction between a search and the mere observation of what is visible is settled. (*Mardis* v. *Superior Court*, 218 Cal.App.2d 70, 74-75 [32 Cal.Rptr. 263], and cases cited therein.) The officers and Lomeli testified that when Lomeli got out of the car, he attempted to keep the officer from seeing inside. Under the circumstances, this justified an affirmative attempt to look inside by the officer. There was testimony that both guns protruded from under the front seat of the car and were therefore visible. The only "contradiction" to this evidence was Lomeli's statement that he had pushed the guns under the seat as far back as he could.

■ Observation at night by means of a flashlight, of weapons protruding from their hiding place does not constitute a search. Discussion of probable cause for a search and the appropriate methods for its conduct is therefore unnecessary. It is said in *Mardis* v. *Superior Court, supra,* at pages 74-75: "It would appear that the officer did not actually carry on a search to discover the forbidden weapon, because the holster carrying the gun was in plain view when the officer looked into the open glove compartment of the car. As was observed in *People* v. *Spicer*, 163 Cal.App.2d 678, 683 [239 P.2d 917], quoting from *People* v. *West*, 144 Cal.App.2d 214, 219-220 [300 P.2d 729]:

" ' "A search implies a prying into hidden places for that which is concealed. . . . While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search'." ' "

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1967.