[Crim. No. 15905. Second Dist., Div. One. Apr. 30, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. SY MEJIA, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with a violation of the Dangerous Weapons Control Act (§ 12021, Pen. Code) and

three prior felony convictions (Dyer Act [1946]; violations, section 211, Penal Code [1947], section 11500, Health and Safety Code [1953]). After his arraignment defendant moved to suppress the evidence under section 1538.5, Penal Code, and to dismiss under section 995, Penal Code; both motions were denied. Defendant then entered a plea of not guilty. By stipulation the cause was submitted on the transcript of the testimony taken at the preliminary hearing. After the commencement of the trial, the court had read and considered the transcript and the People had rested their case defendant sought to reargue the issue of unlawful search and seizure; noting that a motion to suppress the evidence pursuant to section 1538.5, Penal Code, and a motion to dismiss under section 995, Penal Code, had been made prior to trial and denied, the trial court refused to permit the reargument. Defendant was found guilty as charged; the court made no finding on the allegations of the three prior felony convictions. Defendant appeals from the judgment.

Around 12:30 in the morning on March 21, 1968, several police vehicles responded to "a burglary there now" radio call; they arrived at the location within five minutes. About 75 feet from the location where the burglary was reported to be in progress Officer Michael saw defendant walking on the street away from the premises; no other pedestrians were in the area. Defendant was illuminated by a spotlight from the black and white police vehicle but he paid no attention to it and continued walking carrying a coat over his left arm and a package beneath the coat. Officer Michael got out of the police car approximately 25 feet behind defendant and started to follow him; another officer got out in front of defendant and told him to "Hold it for a minute." Defendant then walked toward the curb and the officer and as he did so dropped the package from his left side which, when it hit the curb and parkway, made a metallic sound and split open, and continued walking. Officer Michael was 5 to 10 feet behind defendant; when he "got there"—where the package lay—it was split open revealing the grips of a weapon, portions of a clip and .45 caliber rounds; he then arrested defendant on suspicion of burglary after which he picked up the package, which lay about 4 feet from where he had arrested defendant, made an examination of the contents and found a .45 caliber automatic. Defendant denied "knowledge of possession of the package." Officer Gelb made an examination of the fingerprints on the gun and identified them as belonging to defend-

ant; an abstract of judgment reflected that on August 15, 1958, defendant was sentenced to the state prison pursuant to a plea of guilty to a violation of section 211, Penal Code.

Defendant took the witness stand and very briefly testified that "this particular firearm" was not his personal property.

█ Appellant's main contention is that the evidence was obtained by an unlawful search and seizure. █ Prior to trial defendant did not seek appellate review of the court's denial of his pretrial motion to suppress the evidence by way of petition for writ of mandate or prohibition (§ 1538.5, subd. (i), Pen. Code) but, believing that subdivision (n) of section 1538.5 permitted him to do so, during the trial after the People rested their case attempted to raise the issue of unlawful arrest, search and seizure and direct an argument thereto. Commenting that pretrial motions under sections 1538.5 and 995, Penal Code, had been made and denied, the trial court stated it would "entertain no further argument as to those issues . . . raised at the time of 1538.5 and 995." Defendant then abandoned his argument and took the stand on the merits of his defense denying that the weapon belonged to him. Appellant now says that he "specifically requested permission to renew the motion" and that the "trial judge denied the motion that he be permitted to renew the motion to suppress." The record reveals neither a request for permission to renew defendant's motion to suppress the evidence nor a motion that he be permitted to renew it, and technically he did not make one but his attempt to direct an argument to the issue of unlawful arrest, search and seizure was sufficient to call the court's attention thereto. However, to say, as does appellant here, that the trial court failed to exercise its discretion in determining whether to grant a defense motion to renew the motion to suppress (if indeed it was a motion) is nonsense for the court did give serious consideration to his attempt to reargue the issue and decided not to permit another argument thereon. There is a clear exercise of discretion manifest in the record and not the arbitrary denial asserted by appellant. █ Moreover, his contention that he was arrested without probable cause and the gun was the product of an unlawful search and seizure is without merit.

It is readily apparent that in ordering defendant to "Hold it for a minute," the initial detention was intended by the officer to be but a temporary one for investigation only. █ Circumstances short of probable cause for an arrest may justify temporary detention of a person on the street late

at night by an officer for the purpose of questioning. (*People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Martin*, 46 Cal.2d 106, 108 [293 P.2d 52]; *Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) [1c] Here there was ample justification for ordering defendant to stop—the lateness of the hour, his close proximity to and movement away from the premises reported to have been burglarized with a package covered by a coat and his unusual behavior when illuminated by the police car spotlight; it was at this point the officer told him to "Hold it for a minute."

"The circumstances which allow temporary detention are those which 'indicate to a reasonable man in a like position that an investigation is necessary to the discharge of his duties.' (*People* v. *Gibson*, 220 Cal.App.2d 15, 20 [33 Cal. Rptr. 775].)'' (*People* v. *Manis*, 268 Cal.App.2d 653, 659 [74 Cal.Rptr. 423]; *People* v. *Piedra*, 183 Cal.App.2d 760, 761-762 [7 Cal.Rptr. 152].) Had the officer not stopped defendant and sought an explanation of his peculiar conduct he would have been derelict in his duties. The evidence does not warrant a claim that initially the approach of the officers was for any purpose other than questioning; and their order to defendant to "hold it" that they could investigate and talk to him does not constitute an arrest. (*People* v. *Williams*, 220 Cal.App.2d 108, 112-113 [33 Cal.Rptr. 765].)

[1d] It was not until defendant dropped the package, which made a metallic sound and split open revealing the contents when it hit the curb, and continued walking and Officer Michael, following a few feet behind, observed the package on the parkway to contain the grips of a weapon, portions of a clip and .45 caliber rounds, that defendant was arrested. Before the arrest the gun was not the product of any unlawful search and seizure; Officer Michael did not search to find the gun, nor did he pick it up. When he first observed the weapon it was partially exposed in the package split open on the parkway; it was in plain sight for all to see. The mere looking at that which is open to view is not a search. (*People* v. *Nieto*, 247 Cal.App.2d 364, 370 [55 Cal.Rptr. 546]; *Mardis* v. *Superior Court*, 218 Cal.App.2d 70, 74-75 [32 Cal. Rptr. 263]; *People* v. *Spicer*, 163 Cal.App.2d 678, 683 [329 P.2d 917]; *People* v. *West*, 144 Cal.App.2d 214, 219-220 [300 P.2d 729].) As to the arrest there can be no question but that it was a lawful one. With defendant's unexpected conduct and Officer Michael's observation of the contents of the package, the officers' opportunity for further investiga-

tion ceased, and immediate action was required; under the circumstances Officer Michael could not be expected to do other than make the arrest. ▮ A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (§ 836, Pen. Code; *People* v. *Lara,* 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Schader,* 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) ▮ ''Reasonable cause exists when the facts and circumstances within the knowledge of the officer '. . . at the moment of the arrest would ''warrant a man of reasonable caution in the belief'' that an offense had been committed. *Carroll* v. *United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790].' (*Beck* v. *Ohio* (1964) 379 U.S. 89, 96 [85 S.Ct. 223, 13 L.Ed.2d 142].)'' (*People* v. *Schader,* 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116].) ▮ Nor is there a valid issue of unlawful search and seizure because it was not until defendant was placed under arrest that Officer Michael picked up the package, closely examined the contents and retained the weapon (Exh. 3), and this he had a right to do for it was clearly incident to a lawful arrest; and if under such circumstances it can be said that Officer Michael's conduct in picking up the package from the public parkway constituted a search and seizure of the gun it was not ''unreasonable'' within the meaning of the Fourth Amendment. (*People* v. *Lara,* 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Webb,* 66 Cal.2d 107, 111-112 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].) Whether the package had ever been in defendant's possession was, of course, a factual question and the holding that it had been was fully supported by defendant's fingerprints on the gun and Officer Michael's testimony that he saw defendant drop the package containing the weapon.

Finally, appellant's reliance on *Gascon* v. *Superior Court,* 169 Cal.App.2d 356 [337 P.2d 201], and *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23], is misplaced. In *Gascon* the officers had threatened to illegally search the accused; in *Badillo,* the premises from which petitioner fled had been illegally entered by the investigating officer. Thus, in both cases ''the petitioner was fleeing from the attempted illegal invasion of his constitutional rights.'' (*Gascon* v. *Superior Court,* 169 Cal.App.2d 356, 359 [337 P.2d 201].) In the instant case

there was no statement or act indicating any illegal invasion of defendant's rights. In the light of "the presumption that official duty will be regularly performed" (*People* v. *Piedra,* 183 Cal.App.2d 760, 762 [7 Cal.Rptr. 152]), any suggestion that there was an implied threat of illegal search or unlawful arrest by the officers in ordering defendant to stop for the purpose of investigation, is wholly unwarranted on the record before us.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.