[Crim. No. 580. Fifth Dist. Mar. 13, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE COLUMBUS ROLAND, JR., Defendant and Appellant.

James M. Bell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Respondent.

GARGANO, J.—Appellant was convicted, after jury trial, of receiving stolen property in violation of Penal Code section 496. His application for probation was denied, and he was sentenced to state prison for the term prescribed by law. Appellant appeals from the judgment of conviction.

The chronology of events is essentially as follows. A clothing store, known as the Varsity Shop, was burglarized about 2 o'clock in the morning of December 15, 1967. The burglary was discovered by Mrs. Florence B. Underwood, who called the police. A short time later, when the owner arrived, it was discovered that entry had been made through a broken window and that numerous items of wearing apparel were missing.

At about 4 a.m. of the same morning Officer Edward L. Means observed an automobile traveling between 20 to 25 miles an hour. The automobile failed to stop at the intersection of Walnut and California Streets so the officer turned on his red light and gave chase. The vehicle pulled over to the curb and came to a stop. It was occupied by appellant, who was driving, and a passenger by the name of Odell Lee Evans.

Appellant got out of his vehicle and walked back to the police car. Officer Means asked appellant if he had a driver's license. Appellant reached in his pocket, but his wallet was not there. He told the officer that it was in the car and went back to retrieve it. However, when appellant returned he said that his stereo and wallet had been stolen from the glove compartment of the automobile, and that he was in pursuit of the suspected thief when he ran the boulevard stop. Officer

Means then asked appellant for the vehicle registration, and appellant went back to the car to look for it.

When appellant did not produce the vehicle registration, Officer Means got out of his squad car and walked toward appellant's vehicle. As he approached the officer shined his flashlight through the rear window. He observed a blue sweater on a hanger partially hidden under the seat on the driver's side. It had a Varsity Shop price tag on it, and the hanger also contained the words "Varsity Shop."

After Officer Means observed the partially hidden sweater, he returned to his vehicle and radioed for assistance. Then, when another police unit arrived, the officer again approached appellant's car, told the occupants to get out and arrested them on suspicion of burglary. A subsequent search of the inside of the automobile trunk revealed various items of clothing including shoes, sweaters and slacks. These items had been taken from the burglarized Varsity Shop.

Appellant and his companion Odell Lee Evans were charged with burglary and receiving stolen property and tried at the same time. Appellant testified on his own behalf and said that he met his codefendant at Loretta's Restaurant at around 3:30 on the morning of the burglary. Evans was carrying a bundle of clothing and secured appellant's permission to put it in appellant's car; the bundle was transferred to the trunk because appellant was afraid someone would take it when he and Evans went into the restaurant to purchase two take-out dinners. Appellant stated that when he returned to the automobile he noticed his stereo tape was missing. He also noticed a red car leaving the restaurant's parking lot and, suspecting that the occupants were the thieves, gave chase. He said he was chasing the red car when he was stopped by Officer Means.

Appellant's codefendant Evans called Raymond Flanigan to contradict appellant's testimony that his wallet had been stolen from the glove compartment of the car on the morning of his arrest. The witness testified that he had taken appellant's wallet from him about four or five days before appellant was arrested. He said he took the wallet because appellant had taken his gun, and he intended to keep it until appellant returned the gun.

After Flanigan testified appellant returned to the stand and admitted that Flanigan had taken his wallet a few days prior to his arrest. He explained that afterwards he went to a drug store next to Cal's Market and bought a brown secre-

tarial wallet. Appellant said he also went to the Department of Motor Vehicles and made an application for a duplicate license and received a paper stating that such an application had been made; he claimed that it was this paper that was taken with his wallet on the night of his arrest.

In rebuttal the prosecutor called Mr. Nobuo Renge, the owner of the drug store from which appellant claimed to have purchased the secretarial wallet. Mr. Renge testified that he neither stocked nor sold that type of wallet. Then the prosecutor offered a teletype from the Department of Motor Vehicles. It was from the Sacramento office where duplicate license application records are kept, and stated in essence that appellant had not applied for a duplicate license on or around December 12, 1967. This teletype was received into evidence over appellant's objection after it was identified by Mr. Kenneth C. Lewis, a senior special investigator for the Department of Motor Vehicles in Fresno.

Appellant presents two main contentions for reversal: that during the trial errors in law occurred which resulted in a miscarriage of justice, and that there was insufficient evidence to justify the verdict. We will deal first with the alleged errors.

Appellant concedes that a search without a warrant made in connection with a lawful arrest and as an incident thereto is proper, and that evidence adduced therefrom is not deemed inadmissible as the product of an unreasonable search (*United States* v. *Rabinowitz,* 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430]; *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]). He asserts, however, that the wearing apparel taken from his car trunk was the product of an unreasonable search because Officer Means did not have reasonable cause to arrest him. Appellant argues that his car was stopped at a time and place somewhat removed from the scene of the burglary, and that there was no evidence of any unusual or furtive conduct to warrant an arrest on suspicion of burglary. He also argues that no evidence was offered to prove that Officer Means was aware of the fact that the Varsity Shop had been burglarized, and therefore the officer had no basis to suspect appellant of a burglary merely because he observed a sweater on a "Varsity Shop" clothes hanger in appellant's automobile.

Under Penal Code section 836 an arrest is lawful without a warrant if a peace officer has reasonable cause to believe that the person arrested has committed a felony. Reasonable or probable cause exists when the facts and circum-

stances within the knowledge of the officer at the moment of arrest are sufficient to warrant a prudent man in believing that the person arrested has committed an offense (*People* v. *Ingle*, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Brown*, 45 Cal.2d 640 [290 P.2d 528]). ▮ Moreover, whether an officer had reasonable grounds to believe that the person arrested committed a felony depends upon the peculiar facts and circumstances of each case. In short. it is the "totality of the circumstances" in each case which determines whether or not an arrest and a subsequent search of a vehicle was reasonable (*People* v. *Webb*, 66 Cal.2d 107 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; *People* v. *Upton*, 257 Cal.App.2d 677 [65 Cal.Rptr. 103]).

▮ When the totality of the circumstances of the instant case are considered, it is manifest that Officer Means had reasonable cause to arrest appellant on suspicion of burglary and that the subsequent search of the car trunk was an incident to a valid arrest. Appellant was legitimately stopped at 4 a.m. for running a boulevard stop. Yet, notwithstanding the lateness of the hour, appellant did not possess a driver's license or a vehicle registration slip. Then, to add to the already suspicious circumstances, appellant told the officer that his wallet had been stolen and that he was chasing the suspected thief who he believed to be in another vehicle. However, when appellant's automobile was first observed by Officer Means it was traveling only 20 to 25 miles an hour. Finally, to complete the web of suspicion, the officer observed a sweater partially hidden under the car seat.[1] Significantly, the sweater still contained a "Varsity Shop" clothes hanger.

▮ We note parenthetically that appellant's counsel impliedly admits that Officer Means would have had justification to arrest appellant on suspicion of burglary if he had known of the Varsity Shop burglary when he observed the partially hidden sweater with a "Varsity Shop" price tag on it and that it was on a "Varsity Shop" clothes hanger; appellant merely insists that there is nothing in the record to indicate that the officer knew of the burglary when he made the arrest. However, albeit unnecessary to our decision. we believe that there is ample evidence in the record to infer that the officer knew of the Varsity Shop burglary at the time of the arrest. The police had been informed of the burglary al-

[1]It is settled that observations made at night by means of a flashlight do not constitute a search (*People* v. *Nieto*, 247 Cal.App.2d 364 [55 Cal. Rptr. 546]).

most two hours earlier, and, significantly Officer Means called for assistance immediately after he observed the sweater. Moreover, when help arrived the officer immediately arrested appellant and his passenger on suspicion of burglary.[2]

▉ Appellant argues next that the trial court admitted the teletype in evidence without a proper foundation. He alleges that it was not properly authenticated because it was received at the bureau of narcotics teletype station in the State Building in Fresno, not the Fresno office of the Department of Motor Vehicles. In short, appellant maintains that Mr. Lewis was not qualified to provide the teletype identification since he did not receive it at the Department of Motor Vehicles in Fresno where he was employed. Appellant therefore asserts that someone from the bureau of narcotics should have provided the essential identification.

Appellant's argument is not persuasive. Mr. Lewis testified he was a senior special investigator for the Department of Motor Vehicles in Fresno and that he telephoned the Sacramento office where duplicate license application records are kept and requested the information contained in the teletype. He also testified that the teletype was addressed to him and was received at the bureau of narcotics teletype station in the State Building in Fresno in answer to his request. Under Evidence Code section 1420 ''[a] writing may be authenticated by evidence that the writing was received in response to a communication sent to the person who is claimed by the proponent of the evidence to be the author of the writing.'' Moreover, the teletype shows that it came from the Division of Driver's License, Motor Vehicles Section, in Sacramento. It also indicates that the sender had made a search of the duplicate license applications for the period in question, but appellant's application had not been found. Under Evidence Code section 1421 a writing may also be authenticated ''. . . by evidence that the writing refers to or states matters that are unlikely to be known to anyone other than the person who is claimed by the proponent of the evidence to be the author of the writing.''

▉ Appellant also argues that the teletype was improper rebuttal because it referred to the ''Bureau of Narcotics'' and could have caused the jury to believe that appellant had been involved in narcotics activities. However, appellant's trial counsel did not object to this offensive language nor did

[2]See *Freeman* v. *Department of Motor Vehicles,* 70 Cal.2d 235 (fn. 3, p. 237 [74 Cal.Rptr. 259, 449 P.2d 195]) for a similar analysis.

he request the trial judge to eradicate the language or block it out. Thus, appellant cannot object on this ground for the first time on appeal. Moreover, it should have been reasonably clear to the jury from Mr. Lewis' testimony that the teletype was requested by the Department of Motor Vehicles, not the bureau of narcotics. And if appellant's trial counsel had any doubt in this respect, it could have been readily clarified by cross-examination.

Appellant's second main contention is that the evidence was insufficient to support the verdict. Appellant's argument is two-fold. He suggests that respondent did not meet its burden of proving, beyond a reasonable doubt, that appellant knew that the wearing apparel found in his car was stolen property. He also maintains that the trial court should have, *sua sponte,* separately instructed the jury on each individual element of the offense for which he was convicted instead of giving a single instruction containing all elements ''which was impossible for the jury to understand.''

 It is not the function of the appellate court to decide whether the evidence establishes guilt beyond a reasonable doubt, as appellant apparently suggests. On the contrary, ''[t]he test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact.'' (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].) Moreover, knowledge of the theft of property need not be proved by direct evidence; circumstantial evidence is sufficient (*People* v. *Boinus,* 153 Cal.App.2d 618 [314 P.2d 787].) In fact, the possession of stolen property, accompanied by suspicious circumstances, will justify the drawing of an inference that it was received with knowledge that it had been stolen (*People* v. *Bugg,* 204 Cal.App.2d 811 [22 Cal.Rptr. 896]).

 Applying these principles to the instant case, it is clear that there was substantial evidence to support the jury's verdict. The wearing apparel which was found in appellant's automobile was stolen from the Varsity Shop only a few hours earlier. Moreover, the sweater found inside appellant's car was still on a ''Varsity Shop'' hanger and had a ''Varsity Shop'' price tag attached. In addition, the wearing apparel found inside the car trunk was new and nothing had been done to protect it from being soiled or damaged.

 Appellant's secondary argument that the court did not adequately instruct the jury is so devoid of merit that it is hardly worth mentioning. The court gave the standard

jury instruction which contains all of the elements of the offense of which appellant was ultimately convicted (CALJIC 260). We can safely assume that the jury was composed of reasonably intelligent persons and that they understood the instruction.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1969.