[Civ. No. 27652. First Dist., Div. Two. Jan. 20, 1970.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
FRED YGNACIA MATA, Real Party in Interest.

**COUNSEL**

Thomas C. Lynch, Attorney General, Derald E. Granberg and William D. Stein, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Cyril R. Ash, Jr., for Real Party in Interest.

**OPINION**

**DAVID, J. pro tem.**\*—This is a petition for a writ of mandate to compel the Superior Court of Santa Clara County to set aside its order of November 19, 1969, which granted a motion to suppress evidence, made under Penal Code section 1538.5. We conclude that a peremptory writ should issue, as prayed, as no unconstitutional search and seizure was involved.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

In People v. Mata (No. 47282 in the lower court), it appeared that Henry L. Chamness, police officer of San Jose, stopped Mata, after observing the Cadillac he was driving pass cars on the right, and cutting in. From the police car, stopped four feet behind Mata's after it was halted by the whistle and red light of the police car, Chamness got out and met Mata, who also stepped out of his vehicle. Chamness stated: "I asked him for his driver's license; he didn't have one. He gave me a draft card which showed him to be Fred Mata . . . then I went up to the right front of his car to look at the registration which he said was on the window." There was a registration on the window. Then "I shined my light on to the front seat, and then I shined it on the floor. . . . I observed a folded match book with the match book cover behind the matches leaving the matches exposed, and between the matches and the cover was a small, clear plastic bag containing a small quantity of purple pills. . . . I believed them to be restricted dangerous drug upon seeing them."

He went in the passenger door to get them. It was stipulated at the preliminary examination that Mr. Hider of the crime laboratory, an expert, would testify that the purple tablets contained LSD, an acid derivative.

The officer testified that although he was about to do so, he did not issue a traffic citation, but arrested Mata for violation of Health and Safety Code section 11910 (possession of LSD).

The trial court's analysis of the situation was: "This is a matter where maybe the upper Court would like to be called upon for a further interpretation of the law. In this case, as the Court remembers the facts, the business of the officer was fully concluded. He went to the front of the automobile, and he saw the registration or bill of sale, or the document of title which is on the window, and then says he deliberately, and this was at night-time, commenced a search through the windows of the—or into the car by flashing the light first upon the seat and then down into the floor board where he did perceive what he finally picked up, and the Court finds this was a search not prompted by any furtive actions or other matters apparent to the Officer. He had finished his business, and this being a traffic stop, the Court is of the opinion that it all should have stopped when he became satisfied with the documents on the window, and the Motion to Suppress is granted."

Officer Chamness testified, "I was looking in the front—I wasn't searching for anything; I was just shining the light in looking. . . . No; I wasn't looking for anything in particular; I just shined it in." And again, "I can't recall any purpose. I don't recall looking for anything. The defendant—it might be a matter of habit—he exited his car rather rapidly. When he

stopped he got out immediately, and he was kind of nervous and upset about being stopped and about the traffic violation. . . . Q. Did you have any reason to believe he was under the influence of anything whatsoever? A. At that time I couldn't tell. His driving was bad, but I smelled nothing on his breath, and he stood okay from my observations."

■ The ruling of the trial court, in granting the motion under Penal Code section 1538.5, was based upon the premise that what was observed through the automobile window at night, with light from the officer's flashlight, was an unreasonable search resulting in an unlawful seizure of contraband.

Under the authorities, the trial court was in error. (1) There was no "search." ■ A search is "prying into hidden places for that which is concealed and that the object searched for had been hidden or intentionally put out of the way." (*People* v. *Sjosten* (1968) 262 Cal.App.2d 539, 545-546 [68 Cal.Rptr. 832].) "The essence of a search is the viewing of that which was not only intended to be private or hidden, but that which was, so far as the one searched is able to do so, made concealed or closed from open viewing." (*People* v. *Holloway* (1964) 230 Cal.App.2d 834, 839 [41 Cal.Rptr. 325].)

■ Looking through the window of an automobile is not unlawful. Observation of that which is in view is lawful, whether the illumination is daylight, moonlight, lights within the vehicle, lights from street lamps, neon signs or lamps, or the flash of lights from adjacent vehicles (*Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288]); that the light comes from a flashlight in an officer's hand makes no difference. (*People* v. *Roland* (1969) 270 Cal.App.2d 639, 644 [76 Cal. Rptr. 72], citing *People* v. *Nieto* (1966) 247 Cal.App.2d 364 [55 Cal. Rptr. 546]; *People* v. *Cerda* (1967) 254 Cal.App.2d 16, 23 [61 Cal.Rptr. 784]; *People* v. *Gibson* (1963) 220 Cal.App.2d 15, 23 [33 Cal.Rptr. 775]; *People* v. *Beverly* (1962) 200 Cal.App.2d 119, 125 [19 Cal.Rptr. 67]; *People* v. *Linden* (1960) 185 Cal.App.2d 752, 755, 757 [8 Cal.Rptr. 640].)

This court previously has ruled accordingly (*People* v. *Sjosten, supra,* 262 Cal.App.2d 539, 546; hearing denied Supreme Court).

There being no "search," the principle of *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] (an eavesdropping case), is not involved.

Apparently, the citation of *Desist* v. *United States* (1968) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030, 1048], ceases its pertinence with the read-

ing of the name of the plaintiff. (The holding merely is that the ruling of *Katz* is not retroactive.)

The cases cited in support of the ruling below are not germane to the issue here. The search of the automobile in *People* v. *Sanson* (1957) 156 Cal.App.2d 250 [319 P.2d 422], under the front seat, was held valid, when the defendant's conduct gave the impression he was hiding something; and *People* v. *Shapiro* (1963) 213 Cal.App.2d 618 [28 Cal.Rptr. 907], was similar. The bag of marijuana under the front seat and marijuana debris under the floor mat were held properly uncovered, when defendant's furtive actions impelled the search. In *People* v. *Gil* (1967) 248 Cal.App.2d 189 [56 Cal.Rptr. 88], the defendant was arrested for drunk driving; he was nervous, and when ultimately stopping his car, bent over out of view and returned to the upright position. In searching for liquor and inventorying the car's contents, as it was impounded, the floor mat was lifted. The marijuana cigarette found there was held to be valid evidence, though the question was said to be close. *People* v. *Graves* (1968) 263 Cal.App.2d 719, 730 [70 Cal.Rptr. 509], related to a search of the person arrested. *People* v. *Weitzer* (1969) 269 Cal.App.2d 274, 290, 292 [75 Cal.Rptr. 318] while holding a search of a vehicle invalid if not related to the charge for which a defendant was arrested, still held that contraband found by opening a matchbox (defendant lied about what it was) was valid evidence. The box itself was discovered on a valid "pat down" of the defendant for weapons.

Let a peremptory writ of mandate issue.

Shoemaker, P. J., and Taylor, J., concurred.