Filed 2/6/24  In re K.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re K.J., a Person Coming Under the Juvenile Court Law. | C097594 |
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>   v.<br><br>K.J.,<br><br>       Defendant and Appellant. | (Super. Ct. No. JV141905) |

Minor K.J. was a passenger in a late-night traffic stop.  He was arrested after an officer saw a gun magazine protruding from under the front passenger seat.  Two other firearms were later seized, one from the car and another from minor's underwear.  After the juvenile court denied minor's motion to suppress evidence of the firearms, minor admitted to carrying a loaded firearm in public.  He appeals from the juvenile court's disposition order following that admission, contending the juvenile court erred in denying

1

the motion to suppress because the traffic stop was unduly prolonged. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On the evening of July 5, 2022, Officers Schraer and Cumberland were on patrol as part of Sacramento Police Department's northern gang enforcement unit. Their duties included responding to gunshots and conducting traffic stops in known gang areas. While working with the unit, Officer Cumberland was trained in recognizing firearms.

Around 11:30 p.m., the officers saw a car on El Camino turn northbound on Truxel at a high rate of speed. Officer Schraer testified that "the area [where] the driver was driving" and "the manner in which she was driving" raised his suspicions that "she could have been involved in something else." While catching up to the car, Officer Cumberland determined the car was speeding and saw at least one passenger look back at the patrol car nervously. The officers turned on their lights and pulled over the car for unsafe speed.

After the car stopped, the officers walked up to it from both sides: Officer Schraer from the driver side; Officer Cumberland, the passenger side. While Officer Schraer talked with the driver, Officer Cumberland learned the rear passengers were minors and observed they were not wearing seatbelts. He testified that he and Officer Schraer had "to figure out if [the driver] was a guardian, or a parent, or what their relation to the juveniles was. And since it was late at night, we [had] to figure out the disposition of the juveniles." Officer Schraer testified that they needed to do a records check for the minors because of their age and the late hour because "usually with juveniles out late, they may be missing persons."

Officer Cumberland stayed at the passenger side of the car, while Officer Schraer returned to the patrol car for a records check of the driver and one of the passengers. As Officer Cumberland talked with the passengers, he saw one "reach down to the floorboard with his right hand." When Officer Cumberland "tried to see what [the

2

passenger] was reaching down toward," the passenger "pulled his hand back up and blocked [Officer Cumberland's] view of his hand." Officer Cumberland testified, "It appeared that [the passenger] could have been reaching for something that was in the car; I didn't know what. But that does make us uncomfortable when we see someone reaching toward something[,]" because it "could be a weapon." Officer Cumberland then asked the passengers if they had "anything illegal in the car," and they responded, "No."

Officer Cumberland returned to the patrol car, gave two of the passengers' names to Officer Schraer, and said he was going to have the occupants get out of the car because the rear passengers were "shifting." Officer Cumberland pat searched the occupants as they got out and found no weapons. One of the passenger doors remained open after all the occupants were out.

Officer Schraer talked with the occupants while they sat on the curb. He testified that he had not completed the records check at this point because "[s]tanding by with each of them took precedence over sitting on a computer, conducting a records check."

Officer Cumberland asked for consent to search the car, but the driver refused. Officer Cumberland then took a few steps to the driver side of the car and shined his flashlight into the open passenger door to make "sure that there was nothing in plain view . . . contraband, weapons, before returning to [the patrol car]" to issue the citations. He "saw a magazine protruding from under the front passenger seat, in front of where [the passenger who had made the earlier reaching movement] was sitting." The occupants were arrested, and a second weapon was located under the driver's seat. The officers later seized a third weapon from minor's underwear. The time between the start of the traffic stop and the arrest was less than eight minutes.

The People filed a Welfare and Institutions Code section 602 petition, alleging possession of a firearm by a minor (Pen. Code, § 29610 [all further statutory references are to the Penal Code]; count one), carrying a concealed firearm in a vehicle (§ 25400, subd. (a)(3); count two), carrying a loaded firearm in public (§ 25850, subd. (a); count

3

three), and unlawful possession of an assault weapon (§ 30605, subd. (a); count four). Minor joined a co-minor's motion to suppress the seized firearms.

The juvenile court (Judge Michael P. Kenny) denied the motion, finding the traffic stop legitimate and not unduly prolonged. Specifically, the court found there was "reasonable suspicion to proceed," given that the stop occurred late at night, involved children, and one passenger "had engaged in some furtive movements." The video footage also showed, "the last individual made no effort to close [the passenger door], and the officer then basically observed the magazine in plain view."

Following the denial, minor admitted carrying a loaded firearm in public (count three), and the remaining counts were dismissed. The court (Judge Alyson L. Lewis) declared minor a juvenile court ward and committed him to the care and custody of his mother under the supervision of probation. Minor timely appealed.

DISCUSSION

"The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings." (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.) We " 'defer to [the juvenile court's] factual findings if supported by substantial evidence' but must 'independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment.' [Citation.]" (*People v. Suggs* (2023) 93 Cal.App.5th 1360, 1364.)

Minor contends the juvenile court erred in denying his motion to suppress because the traffic stop for speeding was unduly prolonged. Specifically, minor contends the officers unlawfully deviated from the traffic stop's initial mission without the independent reasonable suspicion necessary to justify additional detention time. We disagree.

"If the police develop reasonable suspicion of some other criminal activity during a traffic stop of lawful duration, they may expand the scope of the detention to investigate that activity. [Citations.]" (*People v. Espino* (2016) 247 Cal.App.4th 746, 756.)

4

"Reasonable suspicion is a lesser standard than probable cause and can arise from less reliable information than that required for probable cause. [Citation.]" (*Id.* at p. 757.) The detaining officer must " 'point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*In re Raymond C.* (2008) 45 Cal.4th 303, 307.)

Here, before the stop began, Officer Schraer suspected "something else" could be amiss based on the location and the driver's manner of driving. Officer Cumberland also saw at least one passenger look back at the patrol car nervously. The entire traffic stop lasted less than eight minutes. (See *People v. Esparza* (2023) 95 Cal.App.5th 1084, 1087 [noting time between approach and arrest as only seven minutes].) Within the first minute, circumstances developed that added to the initial suspicion. While Officer Schraer was gathering information from the driver, Officer Cumberland saw that the passengers were not wearing seatbelts and learned they were minors. The lack of seatbelts alone triggered an additional traffic violation. (Veh. Code, §§ 27315, 27360.5.) And the presence of children without seatbelts combined with the late hour added concern for the passengers' safety and compounded the suspicion of other criminal activity. (See *Michigan v. Long* (1983) 463 U.S. 1032, 1050 [nighttime is relevant factor in establishing reasonable suspicion]; § 273a [child endangerment].)

The basis for suspicion increased when the passenger nearest Officer Cumberland bent over toward the floorboard and blocked Officer Cumberland's view of his hand. Such a pronounced movement was at least nervous, evasive behavior. (See *In re H.M., supra*, 167 Cal.App.4th at p. 144 ["[n]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion"].) Minor's contention that Officer Cumberland failed to articulate why the movement equated to a suspicion of criminal activity lacks merit. Officer Cumberland testified that the reaching movement toward something made him nervous, given that it "could [have been] a weapon." And in that regard, "due weight"

5

must be given to the "reasonable inferences [an officer] is entitled to draw from the facts in light of his experience." (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1043.) The totality of these factors provided reasonable suspicion for the officers to expand the scope of their investigation.

Minor's arguments to the contrary are unpersuasive. His attempt to isolate the factor of nervous behavior as not unusual or necessarily incriminating falls short. A "court's evaluation . . . of . . . factors in isolation from each other does not take into account the 'totality of the circumstances' " and courts have "preclude[d] this sort of divide-and-conquer analysis." (*United States v. Arvizu* (2002) 534 U.S. 266, 274.)

There is also no merit in minor's contention that Officer Cumberland lacked the requisite level of suspicion to order the occupants out of the car. It is well established that officers can order the driver and passengers out of the car, without cause, during a lawful traffic stop. (*Maryland v. Wilson* (1997) 519 U.S. 408, 410 (*Wilson*).) Courts have reasoned that, " '[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.' " (*Id.* at p. 414.)

We further reject minor's contention that Officer Cumberland's brief departure from the speeding car to speak with Officer Schraer undermined his safety concerns. There were four occupants in the car versus two police officers, a ratio that presented a heightened risk of harm to the officers. (See *Wilson, supra*, 519 U.S. at pp. 413-415 [deeming the additional intrusion on car's occupants as minimal when the car has multiple occupants, given the increased risk of harm to an officer].) Thus, Officer Cumberland's return to the patrol car to tell Officer Schraer of his plan to have the occupants get out of the car demonstrated Officer Cumberland's concern for his safety, rather than lack thereof.

Finally, minor's claim that Officer Cumberland failed to give the passengers the opportunity to close the door when they got out of the car lacks merit for three reasons.

6

First, minor provides no authority that Officer Cumberland was required to give such an opportunity, nor does minor provide analysis as to the relevance of this asserted fact. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [point not supported with reasoned argument and citations to authority is treated as waived].)  Second, minor's claim is undermined by the juvenile court's finding that the last child to get out made no effort to shut the door.  This finding is supported by independent review of the footage from Officer Cumberland's body-worn camera.  (*People v. Ayon* (2022) 80 Cal.App.5th 926, 943 [conducting independent review of video evidence in appeal from denial of motion to suppress].)  And third, an officer's plain view observation of contraband from a car's exterior with the assistance of a flashlight is lawful.  (*People v. Superior Court* (1970) 3 Cal.App.3d 636, 639.)  Here, Officer Cumberland made "his observation of an item in plain view from a position where he had the right to be." (*People v. Loma* (2010) 49 Cal.4th 530, 564.)

We therefore conclude that the officers had reasonable suspicion to expand the scope of the traffic stop.

DISPOSITION

The juvenile court's disposition order is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
EARL, P. J.

/s/
KEITHLEY, J.*

---

* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8