[Crim. No. 12665.   Second Dist., Div. One.   Dec. 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
EDWARD KONKEL, Defendant and Appellant.

G. Marc Von Burger, under appointment by the Court of
Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and
Mark W. Jordan, Deputy Attorneys General, for Plaintiff and
Respondent.

FOURT, J.—This is an appeal from a judgment of convic-
tion of possessing narcotics.

In an information filed in Los Angeles on July 1, 1965, defendant was charged in count I with having in his possession for sale marijuana on January 27, 1965, in violation of section 11530.5, Health and Safety Code; in count II with having heroin in his possession on January 27, 1965, in violation of section 11500, Health and Safety Code. A jury trial was waived and it was stipulated that the cause be submitted upon the testimony contained in the transcript of the proceedings had at the preliminary hearing, and that all exhibits received at the preliminary hearing be deemed received into evidence, subject to the trial court's rulings. Defendant was found guilty as charged. The criminal proceedings were adjourned as it appeared that defendant was addicted, or, by reason of repeated use of narcotics, was in imminent danger of becoming addicted to narcotics. It was ordered on November 17, 1965, that a proper petition under the circumstances be filed and heard. The defendant was found to be not acceptable to the program of the California Rehabilitation Center and its case numbered MDA 5052 was ordered dismissed. Defendant's criminal proceedings were reinstated and he was sentenced to the state prison on each count for the term prescribed by law. A timely notice of appeal was filed. While defendant was out on bail in the case presently before the court, he was again arrested for possessing marijuana and pleaded guilty to that charge.

A résumé of some of the facts is as follows: On and before January 27, 1965. Officer Lestelle of the narcotics division of the Los Angeles Police Department received complaints from a citizen who resided in the area close by 11043 Cohasset Street, North Hollywood, to the effect that narcotics were being dispensed from the above named address. The · citizen had observed the defendant make hand-to-hand transactions with people on the front porch of the premises and at different times had observed him go underneath a parked automobile. Officer Lestelle, with Officer Van Court of the same department and division, went to the area of the address at about 2 p.m. on January 27, 1965, to engage in an investigation. The officers met and talked with three citizens at or near the location. The officers were shown some growing ivy on a fence across the street from the house in question. In the ivy. was a bottle with a board on top of it. The officers examined the bottle and its contents. Among other things the bottle contained several multicolored capsules and a marijuana roach. The officers placed the items back in the bottle, replaced

the bottle in the ivy and put the board back in the same position as it was when they found it. The officers then, at the insistence of the citizens, examined under a parked 1953 Pontiac car in front of the address. Near the left rear tire there was a white paper sack and a brown paper sack on the ground with some weeds. The officers opened the brown bag and observed cellophane bags containing green leafy material resembling marijuana. The white bag contained the same sort of substance. The officers replaced the substance in the respective sacks and took up a vantage observation point.

At about 4:30 p.m. the officers saw defendant get out of a white Chevrolet car, walk toward the back and then enter the front door of the house at 11043 Cohasset Street. Shortly thereafter defendant and a woman came out of the front door, walked to within 5 feet of the ivy and were looking into the area where the bottle had been placed. Shortly thereafter defendant and the woman walked back into the house and in about five minutes defendant came out of the front door, walked to the area of the left rear wheel of the Pontiac car and picked up the brown paper bag, opened it and removed an object, then replaced the bag near the tire. The officers saw defendant through binoculars and saw that defendant had in his hand what resembled some of the wax sandwich bags which they had observed previously in the brown bag. Defendant walked back into the house.

Shortly thereafter the officers went to the rear of the Pontiac car to examine what had occurred. In the course thereof they saw a window curtain in the house open, a face appear, and then heard steps running toward the back of the house. Officer Van Court knocked on the front door of the house and Officer Lestelle ran to the rear and there met defendant coming around the corner of the house. Defendant had a Party-Pak bottle in his hand and he raised the bottle over his head as though to strike the officer with it. Officer Lestelle drew his service revolver and defendant dropped the bottle and placed his hands on the fence.

Defendant was placed under arrest for possessing narcotics and was taken to the front of the house where Officer Van Court advised defendant of his constitutional rights. Defendant was asked why he ran out of the house and he replied, ''I saw you two cats bending near the back of the car, and I didn't know who you were.'' The premises were entered and a search was made. In the bedroom which defendant shared with a female, the officers found some marijuana and some

pills. The plant material in the sacks was marijuana and the powder in the capsules was heroin.

Appellant now asserts that the officers secured the contraband as the result of an unreasonable search and seizure.

█ The officers in this case were justified, in fact it was their duty, to investigate the statements or complaints of a citizen to the effect that narcotics activities were being engaged in at the address in question. (See *People* v. *Mickelson*, 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Jolke*, 242 Cal.App.2d 132, 147 [51 Cal.Rptr. 171].)

The officers were shown the bottle and the sacks. To examine the contents under the circumstances was perfectly proper. █ Furthermore, to see that which is in plain view is not a search as that word is used in the Constitution. (See *People* v. *Roberts*, 47 Cal.2d 374, 379 [303 P.2d 721]; *People* v. *Carr*, 244 Cal.App.2d 99, 104 [52 Cal.Rptr. 813]; *People* v. *Lindogan*, 212 Cal.App.2d 466, 472 [27 Cal.Rptr. 905].)

█ The fact that there may have been a technical trespass under the circumstances does not make the search unlawful or unreasonable. (*People* v. *Wright*, 153 Cal.App.2d 35, 38-39 [313 P.2d 868].)

█ The information furnished by the complaining citizens coupled with what the officers saw is more than ample to establish probable cause. When appellant went to what obviously was his cache and took a package of marijuana out of one of the sacks, he directly connected himself to the contraband and the arrest was proper.

Appellant makes no contention that the marijuana was not possessed for the purposes of sale. Appellant makes no contention that he was not possessed of the narcotics.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.