[Crim. No. 21601. Second Dist., Div. Two. Nov. 28, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID WHEELER, Defendant and Appellant.

**COUNSEL**

Sharon E. Giannetta, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, William R. Pounders and Bernardine M. Baldwin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HERNDON, J.**—Appellant pleaded guilty as charged to second degree burglary. He appeals from the judgment pursuant to Penal Code section 1538.5, subdivision (m), contending that his motion to suppress evidence was erroneously denied. We find no merit in this contention.

### Summary of the Evidence

At about 9 p.m. on April 7, 1971, Officers Stone and Smith responded to a report of a burglary which had been committed about two hours earlier on that evening. Robert Miller, the victim of the burglary, informed the officers that his home had been broken into and that a stereo cabinet,

television set, Bulova wristwatch and various items of clothing had been taken.

After interviewing the victim, Officer Stone went across the street to a residence where he talked with two boys, Karl and Philip Cole, ages 12 and 9, respectively. Karl told the officers that at about 7 p.m. that same evening he had observed a person known to him only as "Weasel" knocking on the front door of the Miller residence. While knocking on the door, Weasel continuously looked over his shoulder and appeared to be nervous. Weasel, described as a Negro, about 5'8" in height, and of medium build, was identified as James Wheeler, appellant's brother.

Karl Cole also observed two other men, one of whom had taken a position at the side of the Miller residence and the other behind it. One of these two men, later identified as appellant, was wearing a green coat, a red hat and dark trousers. The other, later identified as Raymond Flute, was wearing a blue jacket and green striped trousers. These two men were described as black men, about 20 to 25 years of age, and about 5'8" tall.

Karl Cole then saw James Wheeler go to the kitchen window, remove the screen and enter Miller's apartment through the window. He then admitted appellant into the victim's house. A little later Karl saw appellant and his brother leaving Miller's home carrying a large wooden cabinet which appeared to be a stereo cabinet.

The two men carried the stereo cabinet to the garage of a house which Karl Cole pointed out to Deputy Stone and which was located approximately three-quarters of a block from the victim's residence. Karl Cole told Officer Stone that this house was the residence of Weasel.

Immediately after interviewing the Cole brothers, Officers Stone and Smith proceeded to the Wheeler residence. By this time it was dark outside. Officer Stone went to the garage while Officer Smith proceeded to the front door of the residence. Officer Stone's purpose in going to the back of the residence was to detain anyone who might attempt to escape from the premises. He noticed that the doors of the garage were open but that there were no lights on therein.

Officer Stone turned on his flashlight and shined it into the garage to see if there was anyone inside. He immediately observed a stereo set in a wooden cabinet approximately two feet inside the garage door. He also noticed that there was other furniture inside the garage which was dusty and dirty but that the stereo appeared to be clean.

Officer Stone then went to the front of the house where he found Officer

Smith and as he was telling Officer Smith about his discovery of the stereo, Raymond Flute, one of the suspects, emerged from the front door of the residence. Officers Stone and Smith walked with Flute toward the driveway leading to the garage. While the three were talking, James Wheeler, appellant's brother, approached. Officers Stone and Smith thereupon arrested Flute and James Wheeler as suspects in the burglary under investigation. Shortly thereafter the victim, Robert Miller, identified the stereo as his property.

After arresting Flute and appellant's brother, the officers recovered the stereo from the garage. Shortly thereafter one of the officers observed appellant in an adjacent alley. Because he was wearing a green coat and a red hat and closely fit the description of one of the men who had been involved in the burglary, he was placed under arrest.

 Appellant contends that the seizure of the stereo was made pursuant to an illegal search of the garage, that the garage is a constitutionally protected area, and that the search and seizure could not be justified as being incidental to a lawful arrest.

### A Lawful Seizure of Potential Evidence

The reasonableness and the legality of the seizure of the stereo cabinet in this case cannot be seriously disputed. Officers Stone and Smith went to the residence of appellant's brother armed with information which manifestly provided them with more than sufficient cause to arrest any suspects to be found at that residence who fitted the detailed and graphic descriptions of the burglars furnished by the witnesses, Karl and Philip Cole.

The propriety of the officers' actions in proceeding to the Wheeler residence for the purpose of further investigation and for the purpose of apprehending and arresting any or all of the three well described suspects is unquestioned and unquestionable. (*People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852].) The officers, by following requisite procedure, properly could have entered either the house or the garage to effect a lawful arrest and, at least within the limits of *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], could have conducted a search incident to such an arrest for the purpose of finding and seizing evidence. (*People* v. *Terry*, 2 Cal.3d 362, 392-394 [85 Cal.Rptr. 409, 466 P.2d 961].)

In this case, however, it did not become necessary for the officers to enter the house or the garage either to effect their arrest of the suspects or to discover the evidence of the crime in the form of the stolen stereo cabinet which Officer Stone discovered in the manner above described.

When Officer Stone flashed his light through the open garage doors, he saw in plain sight a cabinet which, in view of the reliable information the Cole brothers had given him, he could regard, with a confidence approximating moral certainty, as being the cabinet which had been taken from Mr. Miller's apartment and carried to the Wheeler garage by appellant and his brother in the manner described by the eyewitnesses.

It is well established law that the observation of that which is in the plain sight of an officer standing in a place where he has a lawful right to be does not constitute a search and such observation is lawful regardless of whether the illumination permitting the observation is natural light, artificial light, or light from a flashlight held by the officer viewing the object in question. (*People* v. *Superior Court,* 3 Cal.App.3d 636, 639 [84 Cal.Rptr. 81]; *People* v. *Woods,* 6 Cal.App.3d 832, 838 [86 Cal.Rptr. 264]; *People* v. *Hobbs,* 274 Cal.App.2d 402, 406 [79 Cal.Rptr. 281].)

In the circumstances of this case, it is wholly unnecessary to consider the question whether or not the seizure of the stereo cabinet was made as an incident to a lawful arrest or whether it was made in the course of hot pursuit.

The law and the controlling authorities which support our holding that the seizure here in question was a lawful seizure of potential evidence are discussed at considerable length in our recent decision in *People* v. *Curley,* 12 Cal.App.3d 732 [90 Cal.Rptr. 783]. It would serve no useful purpose to extend this opinion by a lengthy quotation from that decision which we now adopt by this reference.

The judgment is affirmed.

Roth, P. J., and Fleming J., concurred.