[Crim. No. 22904. Second Dist., Div. One. Aug. 7, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT RAY SHEPHERD, Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, Harry B. Sondheim and Robert J. Lord, Deputy District Attorneys, for Plaintiff and Appellant.

James D. Riddet for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—Defendant was charged with possession of secobarbital (§ 11910, Health & Saf. Code). The People appeal from order dismissing the cause after the granting of defendant's motion to suppress evidence pursuant to section 1538.5, Penal Code.

Officers Vance and Linz went to 120 East Center in response to a radio call that an assault with a deadly weapon had occurred there, and knocked on the door; defendant answered and while talking to him about the assault they detected a strong odor of burnt marijuana emanating from the premises; they left a few minutes later and two blocks away joined Officer Anderson who had a suspect in custody, and participated in his arrest for assault with a deadly weapon.

Officer Anderson then went to defendant's residence where the assault with deadly weapon had occurred and the two victims were, to investigate the assault and take a report from defendant; defendant invited him into his residence; while holding a clip board, kneeling down on the floor to a coffee table in front of defendant seated on a couch and taking the report from him, he looked down directly in front of him and on the carpet saw some marijuana debris. Meanwhile Officers Vance and Linz returned to defendant's residence; as they walked onto the porch, through the open front door they saw Officer Anderson inside pick up something from the carpet and step to the door; Anderson told them about and pointed to the marijuana debris on the carpet and showed them a stem two inches long and two seeds which appeared to Officer Vance to be marijuana. At this point Officers Vance and Linz walked into defendant's residence; Officer Linz stood by the front door and Officer Vance stood near the living room door.

While Officer Vance was watching Officer Anderson interview defendant he looked over his shoulder to ascertain whether anyone was standing behind him in the doorway and observed about five feet away a walk-in closet and on the floor at the entrance of the closet numerous deposits of green leafy substance which appeared to be marijuana debris; he wanted to check to see if in fact it was marijuana and walked over to the closet, activated his flashlight, stooped down, checked the debris and formed the opinion that it was marijuana; there was enough debris that he could pick up bunches of it and lay them on his palm; then he stood up, walked into the closet, turned on the light inside and looked on the floor for further deposits; on the floor against the wall of the closet he observed other marijuana debris; after examining it he stood up and adjacent to him was a sports jacket on a hanger separated from the rest of the clothing, and he observed through an opening of approximately three inches in the lower left pocket a plastic bag through which he could see numerous red capsules which in his opinion were secobarbital; he extracted the baggie from the pocket, again looked through the cellophane to confirm his opinion, showed them to Officer Anderson and arrested defendant for possession of secobarbital.

Defendant testified that the officers arrived around 3:30 a.m. and there was no debris in the area of the closet; he checked the area on his way to bed.

■ Clearly granting the motion on legal grounds, the trial judge expressly stated that "factually this court has accepted all of the testimony of the officers." Thus there is merit to appellant's argument that the grant-

ing of the 1538.5 motion was error because under the circumstances Officer Vance's actions were proper.

Substantial evidence supports the trial court's finding "that the officers had a right to be where they were. In fact, they were invited in," and we will not disturb this finding. (*People v. Carrillo,* 64 Cal.2d 387, 391 [50 Cal.Rptr. 185, 412 P.2d 377].) From the evidence that defendant himself had called police to report that an assault with a deadly weapon had occurred at his home; Officers Vance and Linz had just been there in response to the call and talked to defendant; defendant knew them and that they were officers; Officer Anderson who had gone to defendant's home to investigate the assault and take a crime report from him, "was invited in by the defendant"; and Officers Vance and Linz entered in the presence of defendant who did not tell them or indicate by word or action then, before or later that they could not come in, he did not want them there or he wanted them to leave, the inference is reasonable that they entered at the implied invitation of defendant and were in his home with his consent. The officers made no statements or representations to defendant and no trickery, stealth or subterfuge was used to gain entry. Officer Vance testified he had no intention of arresting defendant when he entered the residence and that the main purpose "was because Officer Anderson was taking a report and because I had originally smelled the smell of burnt marijuana upon my initial visit to the defendant's residence, feeling that there might be some type of narcotic activity in that location." Moreover, defendant must have been conscious of the burnt marijuana odor on the premises because Officer Vance remarked to his partner upon leaving there the first time, "it was the strongest smell [of marijuana] I had ever smelled coming out of a residence"; and in defendant's presence Officer Anderson showed marijuana debris he had found on the carpet to Officers Vance and Linz. But if defendant was under any subjective misapprehension that Officer Vance entered solely in connection with the assault investigation, it is immaterial. (*People v. Hale,* 262 Cal.App.2d 780, 786-787 [69 Cal.Rptr. 28].) Thus since the officers were there at the implied invitation and consent of defendant freely given there was no violation of constitutional rights (*People v. Michael,* 45 Cal.2d 751, 753 [290 P.2d 852]), the officers' entry was lawful (*Mann v. Superior Court,* 3 Cal.3d 1, 9 [88 Cal.Rptr. 380, 472 P.2d 468]) and they had a right to be in defendant's home.

However, when the officers entered they engaged in no search and did not roam around the premises but remained standing in the living room watching Officer Anderson interview defendant. Their conduct was not

that of officers who had gained entry to investigate suspected activity or to pry into hidden places. But while Officer Vance was standing with his back to an open door, and obviously for his own safety, he looked over his shoulder to see if anyone was behind him in the doorway and in doing so observed an open walk-in closet containing, among other things, a mattress. In plain sight on the floor at the entrance of the closet about five feet from where Officer Vance stood there was and he saw what appeared to be marijuana debris. There was nothing illegal about turning around for his own safety or observing that which was in plain view. Observation of that which is in plain sight "is, in fact, no search for evidence." (*People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665]; *Lorenzana* v. *Superior Court,* 9 Cal.3d 626, 634 [108 Cal. Rptr. 585, 511 P.2d 33]; *People* v. *Block,* 6 Cal.3d 239, 243-244 [103 Cal.Rptr. 281, 499 P.2d 961]; *People* v. *McGrew,* 1 Cal.3d 404, 409 [82 Cal.Rptr. 473, 462 P.2d 1]; *Abt* v. *Superior Court,* 1 Cal.3d 418, 421 [82 Cal.Rptr. 481, 462 P.2d 10]; *People* v. *Gilbert,* 63 Cal.2d 690, 707 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Roberts,* 47 Cal.2d 374, 378-380 [303 P.2d 721]; *People* v. *Superior Court [Mahle],* 3 Cal.App.3d 476, 492 [83 Cal.Rptr. 771].) An officer lawfully inside the premises does not have to blind himself to contraband which is in plain sight. (*People* v. *Roberts, supra,* 47 Cal.2d 374, 380.) Having thus observed that which he believed to be marijuana, Officer Vance was entitled to act on what he saw (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855]) and had the right to walk five steps over to the entrance of the closet and examine it to confirm it was in fact marijuana. (*People* v. *Roberts, supra,* 47 Cal.2d 374, 380; *People* v. *Konkel,* 256 Cal.App.2d 632, 635 [64 Cal.Rptr. 300].) In *Roberts,* as here, the officers were lawfully on the premises; while there they saw a radio they suspected might be stolen. The court held it was proper for the officers to pick up the radio and turn it over in order to obtain the serial number. "Under the circumstances, there appears to be no reason in law or common sense why one of the officers could not pick up the radio and examine it for the purpose of dispelling or confirming his suspicions. The fact that abuses sometimes occur during the course of criminal investigations should not give a sinister coloration to procedures which are basically reasonable." (P. 380.) Use of his flashlight to aid him in examining the debris was proper. (*People* v. *Wheeler,* 28 Cal.App.3d 1065, 1069 [105 Cal.Rptr. 56]; *People* v. *Woods,* 6 Cal. App.3d 832, 838 [86 Cal.Rptr. 264]; *People* v. *Superior Court [Mata],* 3 Cal.App.3d 636, 639 [84 Cal.Rptr. 81]; *People* v. *Boone,* 2 Cal.App.3d 66, 69 [82 Cal.Rptr. 398]; *People* v. *Hobbs,* 274 Cal.App.2d 402, 406 [79 Cal.Rptr. 281].)

Having satisfied himself that the deposits on the floor were marijuana debris and in sufficient quantity that he could pick up bunches of it, he had the right to continue his investigation and look elsewhere on the floor of the closet. There appears to be no contention that the closet door was closed or that the officer opened it. On the state of the record we can only assume that the door was open. As he entered the closet he turned on the light and observed also in plain sight more marijuana debris on the floor of the closet. Such observation is lawful regardless of whether the illumination permitting it is natural light or artificial light. (*People* v. *Wheeler,* 28 Cal.App.3d 1065, 1069 [105 Cal.Rptr. 56].) While legally in the closet and as he arose from the floor he observed in the pocket of the jacket in plain sight what appeared to him to be secobarbital capsules. Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L. Ed.2d 1067, 1069, 88 S.Ct. 992]; *People* v. *Sirhan,* 7 Cal.3d 710, 742 [102 Cal.Rptr. 385, 497 P.2d 1121]; *People* v. *Block,* 6 Cal.3d 239, 243-244 [103 Cal.Rptr. 281, 499 P.2d 961]; *Mozzetti* v. *Superior Court,* 4 Cal.3d 699, 707 [94 Cal.Rptr. 412, 484 P.2d 84]; *People* v. *Bradley,* 1 Cal.3d 80, 85 [81 Cal.Rptr. 457, 460 P.2d 129]); in fact, he was duty bound to seize the contraband. (*Miramontes* v. *Superior Court,* 25 Cal. App.3d 877, 885 [102 Cal.Rptr. 182].) *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] does not preclude such seizure. (*People* v. *Block, supra,* 6 Cal.3d 239, 243.) Having seized the capsules and determined that in fact they were secobarbital, the officer had a right to arrest the defendant.

The order dismissing the cause is annulled and the superior court is directed to vacate its order granting defendant's motion to suppress pursuant to section 1538.5, Penal Code, and to enter its order denying said motion.

Wood, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 3, 1973.