406 So.2d 1093 (1981)
STATE of Florida, Petitioner,
v.
Frank J. BRADY, et al., Respondents.
No. 59054.
Supreme Court of Florida.
October 15, 1981.
Rehearing Denied January 8, 1982.
*1094 Jim Smith, Atty. Gen. and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for petitioner.
Robert W. Foley and Philip G. Butler, Jr. of Foley & Colton and Janet W. Freeman, West Palm Beach, for Frank J. Brady.
Steven M. Greenberg of Pertnoy & Greenberg, Miami, for Ronald B. Elliot and Philip M. Eckart.
Joel S. Fass of Colodny & Fass, North Miami, for Hermogenes Manuel.
Alan I. Karten, Miami, for David List.
ADKINS, Justice.
By petition for certiorari, we have for review a decision of the District Court of Appeal, Fourth District (State v. Brady, 379 So.2d 1294 (Fla. 4th DCA 1980)), which expressly and directly conflicts with a prior decision of the District Court of Appeal, First District (Aylin v. State, 362 So.2d 435 (Fla. 1st DCA (1978)). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Respondents, Frank J. Brady, Philip M. Eckard, and Ronald B. Elliot, were arrested and charged with delivery of marijuana in excess of 100 pounds, possession of marijuana in excess of 100 pounds, conspiracy to possess marijuana in excess of 100 pounds, and importation of marijuana. Respondents, David A. List and Hermogenes Manuel were charged with attempted possession of marijuana in excess of 100 pounds.
On the day prior to the arrest, the Martin County Sheriff's Office was given information indicating that one or two airplanes carrying contraband might land at respondent Brady's ranch. The information, relayed to the sheriff's department at approximately 2 p.m. that day, included the call numbers of the two aircraft. That evening, officers took up surveillance of the Brady ranch from the adjoining property, but the planes never arrived and eventually the watch was abandoned. The next day, again around 2 p.m., another tip was received, again indicating that a plane would land in the evening and so law enforcement personnel staked out the property once more. In order to position surveillance groups around the ranch's airfield, deputies were forced to cross a dike, ram through one gate and cut *1095 the chain lock on another, cut or cross posted fences, and proceed several hundred yards to their hiding places. When the plane finally landed, the officers had to proceed the remaining few hundred yards to the aircraft in order to definitely ascertain what was going on and then make the arrests and seize the marijuana being transferred.
Asserting that the search and seizure operation was improper because the authorities failed to first obtain a warrant, each respondent filed a motion to suppress the evidence taken. The trial court granted the motions, whereupon petitioner filed a notice of appeal of said order. Petitioner also filed a motion for extension of speedy trial pending appellate proceedings, which was granted.
Shortly after the preceding, respondents List and Manuel filed a motion for speedy trial discharge which the trial court granted. Petitioner appealed the order granting the discharge and said appeal was consolidated with that from the order suppressing the evidence seized. The District Court of Appeal, Fourth District, affirmed the order granting the motion to suppress but reversed the order granting the motion for discharge. Petitioner then invoked the discretionary jurisdiction of this Court to review the district court's decision.
We first consider whether the trial court was correct in granting the motions to suppress. Petitioner contends that under the "open fileds doctrine" of Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), respondent's Fourth Amendment protections do not extend to activity conducted in "open fields", and therefore that the authorities need not have obtained a warrant in order to conduct a legal search.
In Hester, revenue agents observed from across a field an exchange of moonshine whiskey in front of the defendant's residence. The defendant was arrested and convicted of concealing distilled spirits and on appeal contended that his rights under the Fourth and Fifth Amendments to the United States Constitution were violated by the trial court's refusal to exclude the revenue agents' testimony concerning what had occurred in the field. The United States Supreme Court, in affirming the conviction, ruled that "the special protection accorded by the Fourth Amendment to the people in their `persons, houses, papers, and effects' is not extended to the open fields." Id. at 59, 44 S.Ct. at 446.
Petitioner argues that the open fields doctrine remains viable, and that there is no constitutionally protected reasonable expectation of privacy in an open field. Although the Hester opinion has not been overruled, subsequent opinions indicate that the open fields doctrine cannot be used as carte blanche for a warrantless search simply because the location searched is not part of a dwelling or its adjacent curtilage. As the Court later observed in its opinion in Katz v. United States, 389 U.S. 347, 350-52, 88 S.Ct. 507, 510-11, 19 L.Ed.2d 576 (1967):
[T]he correct solution of Fourth Amendment problems is not necessarily promoted by incantation of the phrase "constitutionally protected area."
* * * * * *
For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.
(citations omitted).
In his concurrence in Katz, Justice Harlan suggested the following two-part test for determining whether Fourth Amendment protections are warranted in a particular situation:
As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a *1096 person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for the most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited.
Id. at 361, 88 S.Ct. at 516.
Under the reasoning of Katz, if the owner or occupier of a field seeks to keep it private and demonstrates an actual intention to do so, and his expectation is one that society is willing to recognize as reasonable, then Fourth Amendment protections extend to activities in that field.
In determining whether the "twofold requirement" for Fourth Amendment protection is met here, we find helpful our opinion in Norman v. State, 379 So.2d 643 (Fla. 1980).
In Norman, a defendant convicted of possessing cannabis contended that evidence introduced at his trial was inadmissible because it had been discovered during an unauthorized search of his farm. The local sheriff, on the basis of information received from a confidential informant, had gone to the defendant's farm, climbed a fence by a locked gate, and walked 250 yards to a barn in which he saw a substance which he identified as marijuana. He then ordered surveillance of the farm to determine who came and left. Several days later a deputy watching the place saw a man in a truck enter through the gate, drive to the barn and later, loaded with hay, drive back to the highway and into a field. The deputy detained the driver of the truck, the defendant, and took him to the sheriff's office where he was placed under arrest.
One of the points raised on appeal in Norman was whether the unauthorized search of the farm violated the defendant's Fourth Amendment rights. The state contended that the sheriff's search of the farm was justified under the open fields doctrine. We disagreed, holding that the defendant's right against unreasonable searches and seizures was violated, and observing as follows:
It seems incontestable that Mr. Norman exhibited a subjective expectation of privacy in the tobacco barn and its contents. He took overt steps to designate his farm and barn as a place not open to the public. The contraband, covered and wrapped in tobacco sheets, was in a closed structure. The farm itself was fenced, and the gate to the fence was kept locked.

* * * * * *
The district court's reliance below on the "open fields" doctrine as enunciated in Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), was misplaced. Hester stands for the unremarkable proposition that the fourth amendment's protection of one's person, house, papers and effects does not extend to the open fields. Whatever the precise parameters of this long-standing but seldom-used doctrine, it certainly does not extend to a warrantless search of a closed structure on fenced property.

Id. at 647 (emphasis added). Our opinion in Norman made it clear that fences and locked gates are evidence of the owner's or possessor's expectation of privacy.
Obviously there are distinctions between the facts in Norman and those in the case sub judice. The former involved a warrantless search of a closed structure, the latter a search in a field. The contraband in Norman was inside the barn and covered with tobacco sheets, while that in the case at hand, at the time of seizure, was being transferred from an airplane to several waiting vehicles. Such distinctions aside, however, the comments in Norman regarding evidence of an expectation of privacy still have relevance here. In Norman, we emphasized that "[t]he farm itself was fenced, and the gate to the fence was kept locked." Later, we reiterated that the barn was "on fenced property." The opinion clearly indicated that the enclosure and locking of the gate was significant and influenced *1097 our decision. The property in the case sub judice was not only fenced and locked, but was also surrounded by a dike and posted. Respondent unmistakably evidenced an expectation of privacy.
Having decided that respondent clearly demonstrated an expectation of privacy, we now consider the second part of the Katz test: whether the expectation was one that society is prepared to recognize as reasonable. We find, under the facts of this case, that it was. Respondent, as noted before, fenced, locked, diked and posted his property. At the time of his arrest, he was at a spot remote from any entry point to the property. He was, in fact, so remotely located that the arresting authorities, after crossing the dike and fences, had to traverse several hundred yards of field in order to get close enough to see what was going on.
We think the facts are similar to those in United States v. Holmes, 521 F.2d 859 (5th Cir.1975), in which the government appealed an order granting motions to suppress marijuana seized in a warrantless search. The government argued that the owners of the shed which had been searched had no reasonable expectation of privacy because there were no fences surrounding any part of the property (which was quite remote), no "no trespassing" signs posted, nor any sign of a special effort having been made to conceal the marijuana from any "passerby." The Court disagreed with the government, observing:
The government would have us ignore the character of the Moody property. Whatever precautions a homeowner in an urban area might have to take to protect his activity from the senses of a casual passerby, a dweller in a rural area whose property is surrounded by extremely dense growth need not anticipate that government agents will be crawling through the underbrush by putting up signs warning the government to keep away.
More to the point
[T]he continuing concern with property rights is prompted by the realization that an individual often has a very reasonable expectation of privacy in his private property, and it is this expectation which the Fourth Amendment protects.
Id. at 870 (footnote and citation omitted).
We are aware that the facts in Holmes are distinguishable from those here insofar as the object of the search there was a shed while the arrest here was for activity carried on in a field. However, the observation in Holmes concerning agents crawling through underbrush is analogous to the situation here, where agents were forced to cross well-kept, posted fences and a dike, break a locked gate, and then proceed several hundred yards to observe activity on private property. Respondent's expectation of privacy, in light of all the precautions he had taken, was certainly as reasonable as that of the defendant in Holmes.
Obviously, activity conducted in an open field does not, in most cases, warrant a significant expectation of privacy. Under the facts of this case, however, and in light of the size of the property and the precautions taken by respondent, we find that an expectation of privacy was reasonable.
Petitioner cites several cases involving open fields and warrantless searches in which courts held that there had been no violation of constitutional rights. The case sub judice is, however, distinguishable from those cited when analyzed in the manner suggested by Justice Harlan in Katz.
In Air Pollution Variance Board of the State of Colorado v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974), the United States Supreme Court cited Hester and made reference to the open fields doctrine in holding that a warrantless search was proper. The Court noted, however, that "[t]he field inspector was on respondent's property but we are not advised that he was on premises from which the public was excluded." Id., at 865, 94 S.Ct. at 2116. The easy accessibility of the property evidently played a role in the Court's decision. Respondent here, on the other hand, went to great lengths to exclude the public from entering his land, distinguishing this situation from that in Western Alfalfa.
*1098 In United States v. Basile, 569 F.2d 1053 (9th Cir.), cert. denied, 436 U.S. 920, 98 S.Ct. 2268, 56 L.Ed.2d 761 (1978), the Ninth Circuit Court of Appeals, citing Hester and Katz, held that evidence seized by authorities could not be suppressed since the truck in which it was found had been abandoned 100 yards from the defendant's home and thus there could be no reasonable expectation of privacy in the vehicle. Again, however, the facts in the case cited are distinguishable from those in the case at bar. The area in which the truck was abandoned was neither posted nor enclosed in any way which was likely to discourage entry therein. The only obstacle met by the officials in reaching the spot was an old railroad right of way fence. The accessibility of the fields here and in Basile differs significantly.
In United States v. Brown, 473 F.2d 952 (5th Cir.1973), the Fifth Circuit Court of Appeals held permissible the search of a chicken coop on an abandoned, unposted farm. In so holding, the Court made no reference to Katz, citing only to Hester and related cases. The facts in Brown, however, are at such a variance from those here that doubtless the search would also have been held proper even if the Court had used the analysis enunciated in Katz.
United States v. Cain, 454 F.2d 1285 (7th Cir.1972), has little relevance to the case sub judice because, like Brown, the facts are significantly different. The federal agents that conducted the search in Cain were properly on the property for a routine supervisory inspection. The area searched was regularly open to persons paying to hunt there, and there is no indication of an expectation of privacy on the part of the owners. Also as in Brown, the Court did not utilize the Katz test, but instead relied on the open fields doctrine in reaching its decision.
We will not go on, distinguishing this case from those in which warrantless searches of areas other than dwellings were held proper. Suffice it to say that it is distinguishable from those cited by petitioner either because the cited case rigidly followed the open fields doctrine and ignored the test enunciated in Katz, or else presented a situation in which the owner had evidenced no expectation of privacy and/or had no reasonable such expectation.
The respondent here met both of the above requirements. He went to great lengths to demonstrate that outsiders were not welcome on his property  certainly one could not have made it to the spot from which the drug transfer was observed without realizing that he was not to be there. And in view of those efforts to keep others away, the size and seclusion of the property involved, and society's interest in protecting its citizens' privacy when in their homes and on their property, we think that respondent's expectation of privacy was a reasonable one.
We are not here sounding the death knell for the open fields doctrine  only for the blind, indiscriminate application thereof. Activities carried on in a truly open field, or in any area which one knowingly exposes to the public, are not subject to Fourth Amendment protections. There can be no reasonable expectation of privacy in a field open, visible, and easily accessible to others. That, however, was not the case here.
In light thereof, we agree with that part of the decision of the district court holding that the warrantless search herein was improper and that the evidence seized as a result thereof should be suppressed. Petitioner's second point on appeal is that section 893.13(1) (A) (2), Florida Statutes (1977), proscribes simple possession of over 100 pounds of cannabis as a felony of the second degree. The district court so found in its opinion in this cause, and, on the basis of our opinion in Parker v. State, 406 So.2d 1089 (1981), we also agree with that part of the decision.
Having considered each of the points raised by petitioner and finding that none have merit, the district court's decision is hereby approved.
It is so ordered.
SUNDBERG, C.J., and BOYD, OVERTON and ALDERMAN, JJ., concur.
McDONALD, J., dissents with an opinion.
*1099 McDONALD, Justice, dissenting.
I dissent from that portion of the opinion finding that the motion to suppress was properly granted.
This Court has adopted Justice Harlan's analysis of warrantless searches, as expressed in his concurrence to Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967):
[T]he capacity to claim the protection of the fourth amendment depends upon whether a person has a "legitimate" expectation of privacy in the invaded area. That expectation will be recognized as legitimate if a person has exhibited an actual (subjective) expectation of privacy, and the expectation is one that society is prepared to recognize as reasonable.
Norman v. State, 379 So.2d 643, 647 (Fla. 1980). The majority has used the Katz-Norman analysis in the instant opinion. I disagree, however, with the conclusion reached by the majority.
I do not doubt that respondents sought to fulfill the first part of the Katz-Norman test  having a subjective expectation of privacy. But, unlike the majority of this Court and the district court, I find that their expectation was not one society should recognize as reasonable. The property is an 1800-acre cattle ranch and contains an airstrip which respondents used to conduct illegal activities. The airstrip is some 2000 feet from the house trailer where one of the respondents resided. This property, although fenced, is essentially an open field. See Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).
To require law enforcement officers to procure search warrants prior to seizing contraband in such a situation is unreasonable, as opposed to the search and seizure being unreasonable. The fourth amendment does not apply to the circumstances of this case.
I concur with the majority's resolution of the second issue in this case.