## STATE OF FLORIDA v BRACKETT

### OPINION OF THE COURT

Defendant filed a Motion to Suppress Evidence seized from her premises in violation of the Fourth Amendment. On April 3, 1991, the Court received Defendant's sworn testimony and legal argument from Defendant and the State, then orally denied Defendant's Motion to Suppress. The Court having reviewed additional legal argument regarding the Motion to Suppress submitted by Defendant and the State, AFFIRMS its denial of Defendant's Motion to Suppress as Defendant had no legitimate expectation of privacy in the area searched.

The Fourth Amendment to the Constitution protects people from unreasonable searches and seizures by the Government. *Roberts v State,* 443 So.2d 1082 (1 DCA Fla. 1984). This protection is effectuated by the exclusionary rule which prohibits admission of the fruits of an illegal search and seizure. *Rakas v Illinois,* 439 U.S. 128, 58 L.Ed. 2d 387, 99 S.Ct. 241, reh. denied, 439 U.S. 1122, 59 L.Ed.2d 83, 99 S.Ct. 1035 (1978).

A search or seizure of evidence is not illegal just because it was warrantless. Regardless of the propriety of the search the proponent of a Motion to Suppress has the burden of establishing she had a legitimate expectation of privacy in the area searched. *State v Bartz,* 431 So.2d 704 (2 DCA Fla. 1982) and *Acebo v State,* 415 So.2d 909,

108

910 (2 DCA Fla. 1982), both citing *Rakas,* supra. Without an expectation of privacy in the area searched, Defendant does not have the capacity to claim the protections of the Fourth Amendment in order to invoke the exclusionary rule. *State v Rome,* 500 So.2d 255 (1 DCA Fla. 1986).

The concept of "standing", that is the requirement that a Defendant prove entitlement to the Fourth Amendment protections by proving she had a reasonable expectation of privacy in the area searched, was, at one time, considered independently of other Fourth Amendment issues. Now in determining whether the proponent of a Motion to Suppress is entitled to contest the legality of the search and seizure, the court must consider substantive Fourth Amendment issues as well as the concept of standing. *Dean v State,* 478 So.2d 38 (Fla. 1985).

Included in substantive Fourth Amendment issues is the open fields doctrine. Often referred to as an exception to the warrant requirement, the open fields doctrine, if relevant, should be considered when deciding whether a defendant is entitled to contest a search and seizure.

The open fields doctrine permits police officers to enter and search an open field without a warrant. *Oliver v U.S.,* 466 U.S. 170, 173; 80 L.Ed.2d 214, 104 S.Ct. 1735 (1984). Realistically the area searched does not have to be "open" nor must it be a "field". *Oliver,* 466 U.S. at 180, note 9b. The U.S. Supreme Court held that there is no legitimate expectation of privacy in an open field; therefore, the Government's intrusion upon the open field is not an unreasonable search proscribed by the Fourth Amendment. *Oliver,* 466 U.S. at 177, 180.

The only evidence Defendant submitted in her attempt to prove she had a legitimate expectation of privacy in the area searched, the septic tank area located in the area behind Defendant's residence, was her own testimony, which established that the area searched came within the open fields exception.

Defendant admitted during the hearing on her Motion to Suppress that her home is located on an approximately one acre lot. On the lot behind her home she maintains three separate apartment buildings, a total of seven rental units, which have their own driveway access to the street. Defendant admitted that these rental units were leased to the general public, not family. Defendant further admitted that this property directly adjoined a neighbor's property, as well as bordered the Cedar River, without any obstruction. This lot behind her home was not enclosed by a fence nor by other means, nor was it posted in any way on the date of the search. In fact, the lot behind Defendant's home was specifically excluded from the enclosure surrounding Defendant's home and front yard.

**109**

Defendant alleged that the area searched was within the curtilage of her home and therefore not an open field. Although the area was located behind her home, it was not within the curtilage of her home. The extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself. *U.S. v Dunn*, 480 U.S. 294, 300, 94 L.Ed.2d 326, 107 S.Ct. 1134, reh. den. 95 L.Ed.2d 519, 107 S.Ct. 1913 (1987).

Following the U.S. Supreme Court's holding in *Dunn*, this Court considered the following factors in determining the area searched was not curtilage:

1. The proximity of the area claimed to be curtilage to the home,

2. Whether the area was included within an enclosure surrounding the home,

3. The nature of the uses to which the area was put, and,

4. The steps taken by the Defendant to protect the area from observation by people passing by.

Based on Defendant's own testimony,[1] the area searched was not curtilage of her home but was the public area of an apartment complex; therefore, Defendant had no reasonable expectation of privacy.[2]

Defendant cited *State v Brady*, 406 So.2d 1093 (Fla. 1981) to support her position that she had a reasonable expectation of privacy in the area at issue. *Brady* is factually distinguishable from the instant

---

[1] Defendant testified during the hearing that:
1. She was unsure how far the area at issue, the septic tank and area, was from her home. The area was unquestionably closer to the river and the apartments than Defendant's home.
2. She had a fence enclosing her home within her front yard. The back lot wherein the search occurred, was not enclosed with her home. It was completely open.
3. She used the back lot of her home as a commercial apartment complex, open to the public.
4. She took no steps to protect the area at issue from observation by people passing by; the area was visible from her next door neighbor's lot, from the Cedar River and from the driveway which leads into the back lot apartment complex.

[2] *Morsman v State*, 360 So.2d 137, 139 (2 DCA Fla. 1978) writ dismissed 394 So.2d 408 (Fla. 1981), cert denied 452 U.S. 930 (1981) (backyard of a dwelling "which is used for commercial purposes and subjected to a constant stream of visitors or customers, even if surrounded by a high, opaque enclosure", would not be protected by the Fourth Amendment because there is no reasonable expectation of privacy.)

case. In addition, the U.S. Supreme Court vacated the judgment and remanded *Brady* to the Florida Supreme Court for further consideration in light of *Oliver v U.S.,* supra. *State v Brady,* 467 U.S. 1201, 81 L.Ed.2d 339, 104 S.Ct. 2380. The Florida Supreme Court then held that warrantless "open field" searches are proper, therefore resulting evidence should not be suppressed. *State v Brady,* 466 So.2d 1064 (Fla. 1985).

Defendant also cited *State v Morsman,* 394 So.2d 408 (Fla. 1981) and *Fixel v Wainwright,* 492 F.2d 480 (5th Cir 1974), both of which are factually distinguishable from this case.

In *Morsman,* the area searched was the backyard adjacent to a residential dwelling, blocked from view from the front yard and street. The Court in determining Morsman had an expectation of privacy in his backyard, found it significant that the marijuana seized from the backyard was not visible from outside the yard. In addition, the *Morsman* Court distinguished a residential backyard from a front porch open to salesmen or visitors.

In this case, the Defendant's back lot area, specifically the septic tank area, was visible from outside the Defendant's back lot; the entire back lot area was used for commercial purposes and was open to the public. Therefore under *Morsman* this area is not protected and is the recognized exception to the general rule that residential backyards enjoy a reasonable expectation of privacy.

In *Fixel,* the area searched was the backyard of a 4-unit apartment building, one unit of which Defendant occupied. The backyard was completely removed from the street and surrounded by a fence. The Court specifically found that Fixel's backyard was not a common passageway normally used by the building's tenants for gaining access to the apartments, nor was the backyard an area open to salesmen or other businessmen who might approach the tenants in the course of their trade. The *Fixel* Court found that the backyard was not as public or shared as the corridors, yards or other common area of a large apartment complex or motel. The backyard was sufficiently removed and private so that Fixel could reasonably expect privacy. *Id.* at 484.

Unlike the facts in *Fixel,* in the instant case, Defendant's residence was separate from the three apartment buildings which occupied her back lot. The Defendant had her front yard fenced with her house, but the back lot was not fenced; the back lot area was a common passageway for the tenants and other public as evidenced by the separate driveway which ran from the street past the Defendant's residence, to the apartment buildings in the back lot. This Court finds

**111**

the facts in the instant case significantly distinguish this case from *Fixel.*

Defendant failed to meet her burden of proving she had a reasonable expectation of privacy in the area searched. Therefore, Defendant was not entitled to contest the legality of the search and seizure. *State v Suco,* 521 So.2d 1100 (Fla. 1988), *State v Rome,* supra., *Amoss v State,* 547 So.2d 716 (1 DCA Fla. 1989).

In addition to finding the Defendant lacked standing to contest the legality of the search and seizure, the Court finds the open fields exception precludes Defendant from claiming any Fourth Amendment protection due to the absence of a legitimate expectation of privacy.

WHEREFORE, it is ORDERED AND ADJUDGED that Defendant's Motion to Suppress is DENIED.

DONE AND ORDERED in Chambers at Jacksonville, Duval County, Florida, this 14th day of June, 1991.